**Marion Louise FROST, Appellant,**

v.

**William H. FROST, Appellee.**

Court of Appeals of Kentucky.

May 11, 1979.

C. B. Creech, Creech, Hogg & Howell, Ashland, for appellant.

Charles M. Daniels, County Atty., Greenup, for appellee.

Before GANT, HAYES and HOWARD, JJ.

HAYES, Judge.

Marion and William Frost were married thirty-five years. At the time of dissolution of their marriage their ages were respectively, fifty-two and fifty-three. During most of the marriage, William had been a railway employee. Marion had occasionally worked as a science teacher, but could obtain only emergency certificates as she does not have the credits in education which the state requires for teacher certification.

Upon dissolution, Marion was awarded, in addition to four years of maintenance, various items worth several thousand dollars, three years of use of the family home and one-half the equity to be derived from the sale of the home at the end of that period.

■ She now appeals from the division of property. Her main allegation of error is that in view of the fact that the tangible marital estate was relatively small and that William's pension and annuity rights had been accrued entirely during the marriage, that she should have been awarded some interest in those future rights.

This court would willingly accept her contention that William's future retirement benefits should be treated as marital property, but we are prevented from doing so by a recent decision by the United States Supreme Court.

Because William is a railroad employee, his pension and annuity plan is governed by the Railroad Retirement Act of 1937, 45 U.S.C. § 228a et seq. Section 228e of the Act provides that a former spouse has no direct entitlement to benefits if the marriage has been terminated before benefits begin. Section 231m provides that:

> Notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated: Provided, however, That the provisions of this section shall not operate to exclude the amount of any supplemental annuity paid to an individual under section 2(b) of this Act [45 USCS § 231a(b)] from income taxable pursuant to the Federal income tax provisions of the Internal Revenue Code of 1954. [Citations omitted].

A majority of the United States Supreme Court in Hisquierdo v. Hisquierdo, —— U.S. ——, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) have now held that this exemption from process extends to division and assignment of benefits under state dissolution of marriage schemes. (The court made clear that while a pensioner's rights cannot be directly assigned, it is permissible to make awards of maintenance and child support which take account of those funds as constituting all or part of the obligor's ability to pay.) This interpretation of the Railroad Retirement Act is, of course, binding upon us. The Supremacy Clause of the United States Constitution dictates that the provision of the Railroad Retirement Act must prevail over any conflicting provisions of Kentucky law. Thus we must hold that the trial court did not err in its refusal to consider William's future benefits, but we caution readers of this decision that the result was dictated by the atypical circumstance of coverage by the Railroad Retirement Act.

■ Marion also contends that the trial court's limitation of her maintenance award to four years at $450.00 per month constitutes an abuse of discretion.

Kentucky has established the following statutory guidelines for trial courts in determining the appropriateness, amount, and duration of maintenance:

403.200. Maintenance—Court may grant order for either spouse.—(1) In a proceeding for dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of a marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(b) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

(2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

(a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance. (Enact.Acts 1972, ch. 182, § 10.)

The trial court obviously found that Marion Frost's financial condition was such that she met the threshold requirements of section (1), and would in all likelihood continue to meet them for four years. The question now before us is whether the court abused its discretion in failing to award permanent maintenance.

We will assume, for purposes of this discussion, that at the time the temporary award of maintenance is due to expire, Marion Frost will have obtained a teacher's certificate—that is the course of action which William appears to be vigorously urging upon her. At that time Marion may well be able to find regular and fairly well-paid employment. (Given her age and the notorious difficulty, in many parts of the country at least, of finding full-time regular employment as a teacher, our assumptions might be overly optimistic.) In any event, even according to the rosiest scenario that we can devise, Marion will have only an absolute maximum of ten (assuming employment at age 55 and retirement at age 65) to fifteen (assuming retirement at age 70) years in the work force. Retirement benefits accrued in such a short time simply cannot, under any retirement scheme that we know of, be of such magnitude as to help significantly in paying living expenses.

Because William was covered by the Railroad Retirement Act, the couple made no contributions to the Social Security retirement system; thus Marion can look forward to no benefits accrued during the marriage.

One-half of the equity in the couple's home should represent a substantial lump sum, but it will be subject to capital gains tax and will not be of such magnitude as to be capable of producing enough to live on in retirement years.

KRS 403.200(2) *supra*, directs trial courts, in deciding the amount and duration of a maintenance award, to consider all relevant factors, specifically including the ability of the party seeking maintenance to meet his needs independently, the duration of the marriage, and the age of the party seeking maintenance.

We do not believe that the trial court could have fully considered those factors and *still* have awarded only relatively short-term temporary maintenance. It is abundantly clear that even if Marion can become temporarily economically independent, she must relapse into dependency within a relatively few years.

We would add that we cannot approve, as a general proposition, the practice of granting maintenance for a set term of years. Such an approach may be valid when the party receiving maintenance will clearly be self-sufficient at the end of that period, but not before. Moreover, the unpredictability of the job market and of individual occupational progress make such results impossible

to insure, and an absolutely limited grant of temporary maintenance does not allow either party to reopen and show changed or unexpected circumstances.

We recognize that it would be at least as great an evil to encourage the granting of permanent or indefinite maintenance in every instance, and have no intention of encouraging such a result.

■ In instances where one party is not, at the time of dissolution, self-supporting, it is proper for the trial court to take evidence as to that person's prospects for becoming economically independent, and also as to how long it is likely to be before such prospects are realized. Where it appears that a maintenance award should be of limited duration, it would be much better policy for the trial court to treat any fixed time span arrived at as a mere presumption of a reasonable period for the achievement of economic independence, which may be overcome upon a showing by either party. Nothing we have said shall be construed as removing from the party receiving maintenance the duty of making every effort to become self-supporting.

Thus we reverse and remand on the issue of duration of maintenance. We direct the trial court to consider realistically Marion's lack of ability to provide for herself after retirement age and to arrive at a maintenance order which fully reflects that circumstance.

All concur.