## Kevin A. Downs v. Susan A. Downs

[574 A.2d 156]

No. 88-283

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed April 6, 1990

*Blais, Cain, Keller & Fowler, Inc.*, Burlington, for Plaintiff-Appellee.

*Robert B. Hemley* and *Norman Williams* of *Gravel & Shea*, Burlington, for Defendant-Appellant.

**Gibson, J.** Plaintiff and defendant both appeal from a provision in their divorce decree that sought to compensate defendant Susan Downs for funds contributed during the marriage toward plaintiff Kevin Downs' attainment of a medical degree. We reverse and remand the case for further proceedings consistent with the views expressed herein.

## I.

Kevin and Susan were married in August of 1976. At that time, Kevin, who had just graduated from college, and Susan, who had completed three years of university study, agreed that she would leave school and work while he attended medical school. Susan worked as a clerk at a department store from the fall of 1976 until March of 1980, a month before the birth of the parties' first child. Most of her salary was used to pay for living expenses while Kevin attended school; Kevin borrowed money through various loans to pay for his school expenses. Susan did not work outside the home after the birth of the parties' first child, and a second child was born in 1982, at which time Kevin was in the midst of a four-year medical residency at the Medical Center Hospital of Vermont. In August of 1983, Kevin moved out of the family home, and later that year, moved in with another woman and her two children. Shortly thereafter, he filed for divorce. After finishing his residency in 1984, he began working as an obstetrician and gynecologist in practice with another doctor at an initial salary of approximately $60,000 a year, with an expectation of earning up to $200,000 a year in the near future.

After a hearing in July of 1984, the court granted Kevin a divorce and awarded custody of the children to Susan. The court also awarded her $1000 worth of home furnishings and a partially paid family car, and ordered that Kevin pay (1) $500 a month to Susan in rehabilitative maintenance for five years, (2) $500 a month per child in child support, (3) the children's health insurance, plus all reasonable medical, dental and hospital expenses not covered by insurance, (4) all reasonable expenses for higher education for the children, and (5) $50,590 to Susan within five years, a sum representing the total salary earned by

her during the years she worked while Kevin attended medical school, plus interest at the rate of ten percent compounded annually.

In reaching the $50,590 figure, the court reasoned that an educational degree is not property, but that "the increased earning potential made possible by the degree is an asset to be distributed by the court." The court then proceeded to make its disposition of Kevin's enhanced earning potential under the property settlement statute, 15 V.S.A. § 751. The court considered itself unable, however, to award Susan any portion of the increase in Kevin's earning potential resulting from his medical degree because, while there was expert testimony that he could expect future earnings with a discounted present value of three million dollars, there was no testimony regarding the differential in earning capacity between a person with a four-year college degree and a person with a medical degree. Because of this, the court felt confined to making an award based on restitution, which it determined to be $50,590.

Following Susan's motion to alter or amend the order and for a partial new trial, the court held a second hearing and issued a revised order, awarding her $125,000 for Kevin's enhanced earning capacity and $77,281 for her nonmonetary contributions to the marriage. Kevin appealed the revised order, and we reversed the judgment, reinstating the original order because the revised order had not been issued until after the expiration of the nisi period. *Downs v. Downs*, 150 Vt. 647, 549 A.2d 1382 (1988) (mem.). Susan now appeals the original order, seeking a property division or maintenance award that reflects Kevin's increased earning potential resulting from his degree and her nonmonetary contributions to the marriage. In his cross-appeal, Kevin claims that the court erred in making its property disposition, arguing that, since he did not have the ability to pay the restitution amount at the time of the divorce, the order amounted to an improper award of property not acquired during the marriage.

## II.

In a case of first impression in Vermont, we consider the "diploma dilemma." The issue is what remuneration is available to a spouse who sacrifices career opportunities in order to fur-

ther the other spouse's attainment of a professional degree, only to see his or her expectations of future financial security undermined when the student spouse, upon receiving the degree, shortly thereafter seeks a divorce. Although the trial court retains wide discretion in fashioning property and maintenance awards, *Buttura v. Buttura*, 143 Vt. 95, 99, 463 A.2d 229, 231 (1983), any award must fall within the flexible confines of Vermont's statutory guidelines. See 15 V.S.A. §§ 751, 752.

Before addressing Vermont's relevant statutory provisions, we review how other jurisdictions have handled this issue. A few courts have held that a professional degree or the enhanced earning potential that it represents is a marital asset subject to distribution upon divorce of the parties. See, e.g., *In re Marriage of Horstmann*, 263 N.W.2d 885, 891 (Iowa 1978); *Woodworth v. Woodworth*, 126 Mich. App. 258, 261, 337 N.W.2d 332, 334 (1983); *O'Brien v. O'Brien*, 66 N.Y.2d 576, 586–88, 489 N.E.2d 712, 717–18, 498 N.Y.S.2d 743, 748–49 (1985). In *O'Brien*, the court stated that a professional license constituted marital property, but based its decision on the state's Equitable Distribution Law, in which the court found a clear legislative mandate to include an interest in a professional license as marital property. *O'Brien*, 66 N.Y.2d at 583–84, 489 N.E.2d at 715, 498 N.Y.S.2d at 746.

Some courts have held that a professional degree is not an asset to be divided, but that the supporting spouse is entitled to compensation for the amount of his or her investment in the student spouse's education. See, e.g., *DeLa Rosa v. DeLa Rosa*, 309 N.W.2d 755, 759 (Minn. 1981) (supporting spouse awarded lump sum equalling monies she spent toward student spouse's living and educational expenses); *Hubbard v. Hubbard*, 603 P.2d 747, 751–52 (Okla. 1979) (supporting spouse entitled to lump-sum award in lieu of property to prevent unjust enrichment). Under certain circumstances, for instance where there is insufficient property to divide, other courts have provided "reimbursement alimony" or "rehabilitative alimony" awards rather than lump-sum awards. See, e.g., *Saint-Pierre v. Saint-Pierre*, 357 N.W.2d 250, 253 (S.D. 1984) (court should award reimbursement alimony in proper case); cf. *Mahoney v. Ma-*

*honey*, 91 N.J. 488, 501–05, 453 A.2d 527, 534–36 (1982) (only issue at trial was reimbursement claim, but degree holder's earning capacity was held to be a factor in determining permanent alimony, which could be adjusted in future if actual earnings diverged greatly from court's estimate). These courts point out that a professional degree, unlike a vested pension whose value can be readily computed, provides nothing more than the possibility of enhanced earnings that may never be realized. See *id.* at 496–97, 453 A.2d at 531–32.

The majority of courts have found fertile, neutral ground between the approaches described above. These courts hold that a professional degree is not an asset subject to property distribution upon divorce, but, in the interest of justice and equity, fashion a maintenance award using the increased earning potential of the spouse with the degree as a relevant factor in determining an appropriate award. See, e.g., *In re Marriage of Olar*, 747 P.2d 676, 680–81 (Colo. 1987) (en banc); *Drapek v. Drapek*, 399 Mass. 240, 246, 503 N.E.2d 946, 950 (1987); *Stevens v. Stevens*, 23 Ohio St. 3d 115, 120, 492 N.E.2d 131, 135 (1986); *DeWitt v. DeWitt*, 98 Wis. 2d 44, 60–61, 296 N.W.2d 761, 769 (1980); cf. *Washburn v. Washburn*, 101 Wash. 2d 168, 176–79, 677 P.2d 152, 157–58 (1984) (en banc) (increased earning potential is a relevant factor in making maintenance award; no need to address "metaphysical" question of whether professional degree is property). According to these courts, an award of a lump sum would be based on speculative future earnings of the degree holder and amount to an improper attempt to apportion after-acquired property. See, e.g., *DeWitt*, 98 Wis. 2d at 58–59, 296 N.W.2d at 768. Further, because a maintenance award is subject to later modification, in contrast to a property award, which may not be modified, such an award could be adjusted as a result of the effect of future events on the earning capacity of the spouse holding the degree. See, e.g., *Drapek*, 399 Mass. at 244, 503 N.E.2d at 949. This approach accords with existing Vermont law. 15 V.S.A. § 758; *Ellis v. Ellis*, 135 Vt. 83, 85, 370 A.2d 200, 201–02 (1977).

We agree with the majority reasoning and hold that increased earning capacity is not property subject to distribution

under 15 V.S.A. § 751. Thus, the trial court erred in treating Kevin's increased earning potential as an asset to be disposed of under the property settlement statute. Indeed, under § 751 "the contribution by one spouse to the education, training, or increased earning power of the other" is one of the factors to be considered in making a property settlement, 15 V.S.A. § 751(b)(5); hence, it is logical to conclude that increased earning power itself is not marital property. See *Hodge v. Hodge*, 337 Pa. Super. 151, 156, 486 A.2d 951, 953 (1984) (court reached similar conclusion under similar statute). Of course, as provided in § 751(b)(5) and depending upon the circumstances, contributions to increased earning power could be a significant factor in determining a fair distribution of marital property. See *Mahoney*, 91 N.J. at 504, 453 A.2d at 535–36.

In situations as in the instant case, however, where there is not enough property to fairly compensate the supporting spouse for contributions toward the other spouse's attainment of a degree, Vermont's maintenance statute, 15 V.S.A. § 752, is sufficiently flexible to permit the court's consideration of the future earning prospects of the student spouse. Under § 752(a), a court may order permanent or rehabilitative maintenance payments if it finds that the spouse seeking maintenance (1) lacks sufficient income, property, or both, "to provide for his or her reasonable needs," and (2) cannot support himself or herself "through appropriate employment at the standard of living established during the marriage or is the custodian of a child of the parties." We agree with the Colorado Supreme Court in *Olar*, which construed similar statutory language in a case addressing the same issue that is now before us. That court stressed the word "reasonable" in the phrase "reasonable needs" and "appropriate" in the phrase "appropriate employment," emphasizing that maintenance can be a tool to balance equities whenever the financial contributions of one spouse enable the other spouse to enhance his or her future earning capacity. *Olar*, 747 P.2d at 681–82. Thus, "reasonable needs" can mean more than mere sustenance and "appropriate employment" more than the ability to find work. *Id.* "[M]aintenance is not just a means of providing bare necessities, but rather a flex-

ible tool by which the parties' standard of living may be equalized for an appropriate period of time." *Washburn*, 101 Wash. 2d at 179, 677 P.2d at 158.

Once the threshold criteria of § 752(a) have been met, the court shall award maintenance "in such amounts and for such periods of time *as the court deems just*, after considering *all relevant factors* including, *but not limited to*" such components as the financial resources of the party seeking maintenance, the property settlement awarded to that party, the party's ability to meet his or her needs independently, and the time and expense necessary for the party seeking maintenance to acquire an education so that he or she can find appropriate employment. § 752(b)(1) and (2) (emphasis added).

The scope of the statute is clearly broad enough to permit courts to consider the increased earning capacity engendered by a professional degree in determining an award of maintenance. Accordingly, we hold that, when one spouse obtains a professional degree during the marriage, but the marriage ends before the benefits of the degree can be realized, the future value of the professional degree is a relevant factor to be considered in reaching a just and equitable maintenance award. The trial court retains broad discretion in determining the amount and duration of any maintenance award, *McCrea v. McCrea*, 150 Vt. 204, 207, 552 A.2d 392, 394 (1988); appropriate factors for the court to consider in making such an award are set forth in 15 V.S.A. § 752(b), and would include the future earning prospects of the student spouse. Further, upon remand, the parties in the instant case may provide any current, relevant information in order that the court can arrive at a just maintenance award. See *Klein v. Klein*, 153 Vt. 551, 557, 572 A.2d 900, 904 (1990).

Susan also contends that the trial court erred by refusing to allow an award based on her nonmonetary contributions to the household and child rearing because of the absence of testimony evaluating the contributions. Because a maintenance

award is not based on a theory of restitution, the issue is inapposite in light of our opinion here.

■ Finally, because the property division and maintenance award are so closely related, see 15 V.S.A. § 751(b)(7), the property division must be vacated in order to allow the trial court leave to revise it if necessary. *DeGrace v. DeGrace*, 147 Vt. 466, 470, 520 A.2d 987, 990 (1986).

*The provisions of the February 19, 1985 order dividing the parties' property and requiring that plaintiff pay defendant $500 per month maintenance and the sum of $50,590 within five years are vacated; in all other respects, the decree is affirmed. The matter is remanded for further proceedings consistent with this opinion.*