## Linda J. Bancroft v. Robert L. Bancroft

[578 A.2d 114]

No. 89-162

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed June 15, 1990

*Linda R. LeRoy* of *McNeil & Murray*, Burlington, for Plaintiff-Appellee.

*S. Crocker Bennett, II*, of *Paul, Frank & Collins, Inc.*, Burlington, for Defendant-Appellant.

**Gibson, J.** Defendant Robert Bancroft appeals from a divorce decree of the Chittenden Superior Court awarding plaintiff Linda Bancroft maintenance and child support, as well as physical and legal responsibility for the parties' two children. We affirm.

I.

Linda and Robert Bancroft separated in November of 1986 after eleven and one-half years of marriage. The parties have two children—Nathan, born in 1982, and Ira, born in 1983. Upon separation, the parties attempted a joint-custody arrangement with the children, but it was unsuccessful because of animosity between the parties. Linda, a consultant and placement specialist for the Burlington School Department with an

approximate annual income of $30,000, was the children's primary nurturing parent during their infancy. Robert, a consultant and an assistant professor in the College of Agriculture at the University of Vermont with an approximate annual income of $40,000, has assisted in the care of the children since their birth. The parties have resided in Vermont since their marriage, except from 1976 to 1981, when they moved to Indiana and then Washington, D.C. so that Robert could obtain his doctorate. As a result of the move from Vermont, Linda had to close a pension account and did not have another plan available to her until she accepted her current job.

Linda filed for divorce in November of 1986, and was awarded temporary custody of the children. Following three days of hearings on the merits, the superior court granted the parties a divorce, assigned Linda physical and legal responsibility for the children, and required that Robert pay $772 per month in child support and $200 per month as rehabilitative maintenance for a period of five years or until remarriage. The court also granted Robert visitation rights, enabling him to be with his children every other weekend, one weekday evening each week, and one-half of any school vacation time. Robert filed a motion to amend the findings and judgment or, in the alternative, for a new trial. Following a hearing, the court denied the motion.

On appeal, Robert contends that (1) the court erred in awarding Linda separate maintenance; (2) the court's award of parental rights and responsibilities solely to Linda violated Robert's state and federal constitutional right to parent; and (3) the court's award of visitation was contrary to the evidence and state public policy.

## II.

Robert argues that the maintenance award was improper because (1) the court's reasons for making the award were contrary to the law and to the evidence presented in the case; (2) the court made no finding regarding Linda's "reasonable needs," as required by 15 V.S.A. § 752; and (3) the court failed to determine that Robert had the ability to pay maintenance. We disagree.

Under 15 V.S.A. § 752(a), the court may order maintenance if it finds that the spouse seeking maintenance (1) lacks sufficient income or property to provide for his or her reasonable needs, and (2) is the custodial parent or is unable to support himself or herself at the standard of living established during the marriage. A maintenance award must fall within the flexible confines of this statute, *Downs v. Downs*, 154 Vt. 161, 164, 574 A.2d 156, 157 (1990); a party challenging the award must show that there is no reasonable basis to support it. *Quesnel v. Quesnel*, 150 Vt. 149, 151, 549 A.2d 644, 646 (1988).

Here, the court concluded that the property settlement would have to be supplemented by some maintenance because defendant had a greater capability of acquiring future capital assets and income. Further, in determining that Robert should pay Linda $200 per month for five years or until remarriage, whichever came first, the court stated,

> The provisions of 15 V.S.A. § 752 were considered and weighed to the facts. The reality that it is more expensive to live separately is not reflected in the parties' lifestyles. Both parties are living above their means presently.
>
> Plaintiff should have some spousal maintenance to reflect the interruption of her career goals caused by the relocation necessary for defendant's further education. She gave up a teaching position and it appears she has not made up the financial status she would have achieved but for the relocation. In a few years that discrepancy should be largely alleviated.

The court further explained its denial of Robert's motion for amended findings or a new trial:

> As the court previously concluded, this interruption [in career goals occasioned by her relocation] has resulted in the plaintiff having a lesser financial status than would have probably existed if no interruption had occurred. The court has weighed the evidence on this question and believes that the plaintiff should receive temporary rehabilitative maintenance until she achieves an appropriate level of income, which along with child support, will enable her to support her children and herself. The court is persuaded that an

award of rehabilitative maintenance, which is designed to aid the plaintiff in regaining a level of income she would have otherwise achieved but for the interruptions in her career, is consistent with the substance and purpose of 15 V.S.A. § 752.

■ From these findings, it is clear that the court awarded Linda rehabilitative maintenance to help equalize the parties' financial status in the next few years and to provide for Linda's reasonable needs in light of her standard of living during the marriage. A maintenance award based on these considerations is perfectly proper. See *Downs*, 154 Vt. at 166–67, 574 A.2d at 159 (maintenance is more than just a means of providing bare necessities—it is a flexible tool that can equalize the parties' standard of living for an appropriate period of time); *Klein v. Klein*, 150 Vt. 466, 474, 555 A.2d 382, 387 (1988) (same); *McCrea v. McCrea*, 150 Vt. 204, 207, 552 A.2d 392, 394 (1988) ("reasonable needs" may be determined within the context of the parties' standard of living during the marriage). Upon review of the record, and particularly considering the disparity in the parties' current income, earning potential, and accrued pension benefits, we conclude that there was a reasonable basis for the trial court's limited maintenance award.

■ We decline to consider Robert's contention that the court did not explicitly find that he was capable of making the maintenance payments, as that issue was not raised in his lengthy post-judgment motion. See *Lewis v. Lewis*, 149 Vt. 19, 23, 538 A.2d 170, 173 (1987) (claim of error not raised at trial or in post-judgment motion is waived for purposes of appeal); see also *Viskup v. Viskup*, 149 Vt. 89, 92, 539 A.2d 554, 557 (1987) (court not required to make written findings when none are requested).

## III.

With respect to custody, 15 V.S.A. § 665(a) provides that "[w]hen the parents cannot agree to divide or share parental rights and responsibilities, the court shall award parental rights and responsibilities primarily or solely to one parent."

Further, in making a custody determination, the court must be guided by the "best interests of the child" and must consider the factors enumerated in § 665(b). See *Poulin v. Upham*, 149 Vt. 24, 26, 538 A.2d 181, 182 (1987). Robert maintains that in following § 665(a) the court violated his federal and state constitutional rights to parent.* Further, Robert argues that the "best interests of the child," absent any showing of potential harm to the child, is an inadequate standard by which to terminate a parent's fundamental right to rear his or her child. Again, we disagree.

As Robert points out, we have held that a parent has a fundamental right to custody, and that the presumption that the best interests of the child are served by granting custody to a natural parent may be overcome only in extraordinary circumstances. *Paquette v. Paquette*, 146 Vt. 83, 92, 499 A.2d 23, 30 (1985). *Paquette*, however, does not support Robert's contention here. In considering whether a court could award a child to his stepparent rather than his natural parent, we emphasized that the best interests of the child must guide such a determination. *Id.* at 90, 499 A.2d at 28. Although we took note of a parent's right to custody of his or her own child, we stated that this right is not absolute, but rather is bestowed by the state as parens patriae for the welfare of the child. *Id.* at 90, 499 A.2d at 29. Where both a stepparent and a natural parent seek custody, we presume that the best interests of the child are served when the natural parent retains custody; accordingly, custody is awarded to the stepparent only if he or she shows, by clear and convincing evidence, that "the natural parent is unfit or that extraordinary circumstances justify an award of custody to a nonparent." *Id.* at 92, 499 A.2d at 30.

---

* According to Robert, the court's custody order violates his federal "right to privacy," as articulated in *Griswold v. Connecticut*, 381 U.S. 479 (1965), and other United States Supreme Court decisions, and Chapter 1, Article 1, of the Vermont Constitution, which provides, in part,

   That all men are born equally free and independent, and have certain natural, inherent, and unalienable rights, amongst which are the enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining happiness and safety.

■ The instant situation is quite different. Here, both parents want custody of the children, and one of them, Linda, is unwilling to share custody. Since both Robert and Linda are the natural parents of the children, there is no presumption that the best interests of the children are served by granting custody to either one of them. On the other hand, in enacting § 665(a) in 1986, the Legislature has concluded that court-imposed joint custody, without the mutual agreement of the parties, is not in a child's best interest. This Court had independently come to the same conclusion. See, e.g., *Barbour v. Barbour*, 146 Vt. 506, 508, 505 A.2d 1217, 1218–19 (1986); *Lumbra v. Lumbra*, 136 Vt. 529, 532, 394 A.2d 1139, 1142 (1978) (joint custody should be decreed only in "extraordinary circumstances"). As this Court recognized in *Berlin v. Berlin*, 139 Vt. 339, 340, 428 A.2d 1113, 1114 (1981), "the same lack of agreement that requires that the courts be asked to settle domestic difficulty also indicates that the possibility of a cooperative custody solution is usually remote." Thus, by granting custody to one parent, the trial court acted in accordance with long-standing precedent, recently incorporated into the statutory scheme, that when the parties are unable to agree on sharing parental responsibilities, it is in the children's best interest for one parent to have ultimate responsibility for directing their lives. Therefore, unlike the stepparent in *Paquette*, Linda need not show by clear and convincing evidence that Robert is an unfit parent.

■ Robert, however, argues that, by creating an irrebuttable statutory presumption against joint custody when the parents cannot agree on a custody arrangement, § 665(a) unconstitutionally deprives him of his fundamental right to parent absent a particularized finding of the harm that joint custody would cause. We need not address the constitutionality of § 665 because the trial court made a finding that joint custody was inappropriate. As noted, in making its custody determination, the court found that Linda had been the primary nurturing parent in the past and concluded that the children's best interests would be served by continuing the nurturing relationship between their mother and them. Further, the court found that ani-

mosity between Robert and Linda had led to the failure of the parties' informal joint-custody arrangement and that continued animosity "strongly dictated against a sharing of parental responsibility." These findings, which we conclude were supported by the record, were sufficient for the court to award custody of the children to Linda, even assuming it could have granted joint custody over the objection of one of the parties. We will not disturb the court's custody order. See *Bissonette v. Gambrel*, 152 Vt. 67, 69–70, 564 A.2d 600, 601 (1989) (trial court has broad discretion within statutory guidelines to determine child's best interest, and its judgment stands unless clearly erroneous).

## IV.

■■ Finally, Robert contends that the court's visitation order was not supported by adequate findings and is contrary to 15 V.S.A. § 650, which declares, in part, that upon the parents' divorce, "it is in the best interests of their minor child to have the opportunity for maximum continuing physical and emotional contact with both parents, unless direct physical harm or significant emotional harm to the child or a parent is likely to result from such contact." The court's order gave Robert visitation rights that amounted to fifty percent of the children's time on weekends and school vacations, and approximately twenty-five percent of their time overall. In light of the fact that Linda was granted primary responsibility for the children, this visitation schedule did not offend § 650. Moreover, the court's findings regarding its custody determination were sufficient to support its visitation order.

*Affirmed.*