## Michael J. Strauss v. Roberta J. Strauss

[628 A.2d 552]

No. 91-334

Present: **Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed June 11, 1993

*Charles R. Tetzlaff* of *Latham, Eastman, Schweyer & Tetzlaff, P.C.*, Burlington, for Plaintiff-Appellee.

*Karen Rush Shingler*, Burlington, for Defendant-Appellant.

**Dooley, J.** The sole issue in this appeal from a final divorce order of the Chittenden Family Court is whether defendant Roberta Strauss is entitled to permanent maintenance, rather

than time-limited rehabilitative maintenance, from her husband Michael Strauss. We hold that she is so entitled and reverse and remand.

At the time of the divorce in 1991, defendant was forty-eight years old and plaintiff was fifty-one years old. They were married in 1963, and shortly thereafter plaintiff earned a Ph.D. in chemistry. Following a short post-doctoral program in Scotland, they settled in Burlington when plaintiff obtained a job at the University of Vermont, where he has since become a tenured professor of chemistry.

The parties raised two children, both of whom are now adults. Defendant attended the University of Vermont and in 1976 was awarded a degree in psychology, earning phi beta kappa honors. In 1990, she obtained a fifth-year certificate in order to teach school and has become licensed as a teacher. She has worked outside the home only infrequently, as a retail sales clerk and as an editor for a local magazine. At the time of the divorce hearing, she was working on a bicentennial project as a volunteer.

Plaintiff's income is about $58,000 per year, of which about $5000 comes from a government grant that will expire soon. He is expected to have a stable income until he retires at age sixty-five.

The major assets of the parties were a house and a camp, with equity values respectively of $106,000 and $40,000, and plaintiff's pension, with a present value of $211,000. The family court awarded the house to defendant and the camp to plaintiff and split the pension between them. Defendant requested a maintenance award, and the court agreed she was entitled to maintenance, but concluded:

> The wife here is being awarded the marital home with a relatively small mortgage and low monthly payments. She is capable of working, although she is not likely to quickly locate a permanent job which will meet her reasonable needs. We decline to conclude that she will never be able to find such a job. This is a clear case for rehabilitative alimony. We have here a woman who is healthy, intelligent and not tied down to the care of children. To conclude that she should be awarded permanent alimony would be to conclude that she is some sort of social misfit who will never be able to support herself. The evidence nowhere supports

such a conclusion. This is a case for rehabilitative mainte-
nance. . . . One of its purposes is to put pressure on the
recipient to find employment or to undertake education or
training which will lead to employment.

The court awarded maintenance of $1500 per month until the
end of 1993, $1000 per month until the end of 1995, and $500 per
month until the end of 1997. It added an award of up to $100 per
month during the maintenance period to cover uninsured
"counselling or therapy as is reasonably likely to enhance the
wife's employability."

The court's conclusion was based in part on evidence of an
employment counselor who testified that defendant's prospects
of finding a teaching job were poor because of her age, her lack
of experience, and the recession's effect on the labor market.
He felt that defendant might be able to obtain work in the serv-
ice sector, but even there, jobs were limited and the work would
be low-paying and possibly only part-time. The employment
counselor noted that defendant has certain idiosyncracies that
gave employers a negative impression at job interviews. The
court's findings reflect most of this evidence, and the award for
counseling was intended in part to overcome the idiosyncracies.

■ The relevant statute, 15 V.S.A. § 752(a), authorizes an
award of maintenance, either rehabilitative or permanent,
when the recipient spouse lacks sufficient income or property
"to provide for his or her reasonable needs" and "is unable to
support himself or herself through appropriate employment at
the standard of living established during the marriage." The
reference to reasonable needs should not be looked at in rela-
tion to subsistence. *Downs v. Downs*, 154 Vt. 161, 166, 574 A.2d
156, 159 (1990). The critical comparison is to the standard of
living established during the marriage. See *Johnson v. John-
son*, 155 Vt. 36, 40–41, 580 A.2d 503, 506 (1990). Thus, spousal
maintenance is intended to correct the vast inequality of income
resulting from the divorce, *Russell v. Russell*, 157 Vt. 295, 299,
597 A.2d 798, 800 (1991), and to equalize the standard of living
of the parties for an appropriate period of time. *Downs v.
Downs*, 159 Vt. 467, 469, 621 A.2d 229, 230 (1993).

■ In a long-term marriage, maintenance also serves to
compensate a homemaker for contributions to family well-being

not otherwise recognized in the property distribution. See *Klein v. Klein*, 150 Vt. 466, 474, 555 A.2d 382, 387 (1988). This is more than a "rehabilitative function." *Russell*, 157 Vt. at 299, 597 A.2d at 800. The purpose of rehabilitative maintenance is to assist the recipient-spouse in becoming self-supporting. See *Belanger v. Belanger*, 148 Vt. 202, 204–05, 531 A.2d 912, 914 (1987) (court awarded time-limited maintenance to give wife opportunity to establish herself financially).

The statute authorizes both rehabilitative and permanent maintenance and states no preference between these approaches. See *Russell*, 157 Vt. at 299, 597 A.2d at 800–01. Our cases require that rehabilitative maintenance be time-limited, *Cleverly v. Cleverly*, 147 Vt. 154, 159, 513 A.2d 612, 615 (1986), but give little guidance on when time limits should be imposed. Given the wide discretion available to the trial court in fashioning a maintenance award, we have generally affirmed the approach adopted by the trial court. See, e.g., *Quesnel v. Quesnel*, 150 Vt. 149, 151, 549 A.2d 644, 646 (1988) (maintenance award must be affirmed unless "there is no reasonable basis to support" it). We have noted the power to modify a maintenance award in the future if predictions about the recipient's ability to become self-supporting prove erroneous. See *Cleverly*, 147 Vt. at 159–60, 513 A.2d at 615. We emphasized in *Klein*, however, that "rehabilitative maintenance alone would not be sufficient unless the court can find, based on the evidence, that defendant will be able to support herself at the standard of living established during the marriage." *Klein*, 150 Vt. at 476, 555 A.2d at 388.

Although we have not clearly defined when maintenance should be time-limited, the considerations we have used in affirming trial court decisions are instructive. In *Bancroft v. Bancroft*, 154 Vt. 442, 578 A.2d 114 (1990), we affirmed a five-year award of rehabilitative maintenance at the termination of an eleven and one-half year marriage. At the time of the divorce, the wife was in a professional position earning $30,000 per year while the husband was earning $40,000 per year. The trial court grounded the award on the reduction of the wife's earning capacity that resulted from a relocation necessary to further the husband's education. We concluded that equalizing the parties' financial status for an appropriate period was a proper purpose. *Id.* at 446, 578 A.2d at 117.

At the other extreme is *Russell v. Russell*, 157 Vt. at 298–99, 597 A.2d at 800–01, where we affirmed an award of permanent maintenance, over challenge by the husband, to a forty-four year old wife after a twenty-five year marriage. The wife had been a homemaker, raising four children, and had limited work experience outside the home. She was a diabetic. We noted that "the prospects that she would remotely approach the husband's earning capacity were slim" and concluded that the award served to maintain the wife at the standard of living established during the marriage as well as compensate her for her service as a homemaker. *Id.*

■　Although there are no definitive standards in *Bancroft* or *Russell*, it is clear that we found important the length of the marriage, the role the wife played during the marriage, and the income the wife is likely to achieve in relation to the standard of living set in the marriage. These are the most critical factors that have been considered by other courts in determining whether time-limited maintenance is appropriate. See *In re Morrison*, 573 P.2d 41, 51–52, 143 Cal. Rptr. 139, 149–50 (1978); *Walter v. Walter*, 464 So. 2d 538, 539 (Fla. 1985); *Frost v. Frost*, 581 S.W.2d 582, 584–85 (Ky. Ct. App. 1979); *Johnson v. Steel, Inc.*, 581 P.2d 860, 863–64 (Nev. 1978); *Herring v. Herring*, 335 S.E.2d 366, 368–69 (S.C. 1985).

■　We cannot find a recognition of the important factors in the trial court's decision here. The court recounted defendant's limited employment history and stated that it was unlikely she would obtain a teaching job. It concluded, however, that defendant would be able to obtain some sort of job because she is not a social misfit, and it awarded rehabilitative maintenance for that reason. There is no finding that the job would produce an income that would enable defendant to live at the standard established during the marriage, as required by *Klein*.[1] Nor is there any consideration of defendant's long-term contribution as a homemaker and primary caretaker of the children. Although we accord wide discretion to the court in fashioning a mainte-

---

[1] In view of our holding that defendant is entitled to maintenance, *infra*, we do not decide whether the court could have made such a finding on the evidence present here.

nance award, the award must be supported by sufficient findings. See *Sullivan v. Sullivan*, 147 Vt. 407, 408, 518 A.2d 33, 34 (1986). The findings are insufficient to support the court's determination that maintenance should be time-limited. See *Johnson v. Steel, Inc.*, 581 P.2d at 864 (award of rehabilitative maintenance reversed where there are no findings that spouse will earn enough to equal the maintenance); *Therrell v. Therrell*, 383 S.E.2d 259, 261 (S.C. Ct. App. 1989) (rehabilitative maintenance award reversed because of lack of finding spouse will achieve self-sufficiency at end of maintenance period).

■ Although we have narrowly addressed the question before us, we find it appropriate to go further to define the limits of the discretion available to the trial court. See *Klein*, 150 Vt. at 472, 555 A.2d at 386. The main difficulty in fashioning an appropriate maintenance award is in predicting "the future circumstances of the parties." *Klein v. Klein*, 153 Vt. 551, 557, 572 A.2d 900, 904 (1990). Although an award based on an inaccurate prediction can be modified in the future, we do a disservice to those who use our courts if we lock them into continuous, expensive litigation. Indeed, a major purpose of rehabilitative maintenance, to allow the spouses to get on with independent lives, will be frustrated by the continuing litigation. Moreover, it may be impossible for a spouse with an inadequate income to pay for necessities to obtain timely court action to modify a maintenance award. Thus, while it is theoretically possible to eliminate the time limitation and convert a rehabilitative maintenance award into a permanent award if predictions about the recipient's ability to become adequately self-supporting prove optimistic, we must minimize the cases in which such conversion is necessary. See *Frost*, 581 S.W.2d at 584 (time-limited maintenance appropriate only when spouse "will clearly be self-sufficient at the end of that period").

■ The evidence in this case showed that it was extremely unlikely that defendant would ever be able to achieve a sufficient income to maintain the middle-class living standard established during the marriage. Although defendant is better-educated than many others, she is a displaced homemaker whose age, gender and lack of employment experience greatly limit her earning potential. See Goldfarb, *Marital Partnership*

*and the Case for Permanent Alimony*, 27 J. Fam. L. 351, 368 (1988–89); Comment, *The Displaced Homemaker and the Divorce Process in Wisconsin*, 1982 Wis. L. Rev. 941, 942. Moreover, she has served for many years as a homemaker whose contribution to the earning capacity of her husband is entitled to recognition. A time-limited maintenance award is likely to leave her with an inadequate income at the end of the time limit and no compensation for her years as a homemaker. See *Crim v. Crim*, 345 S.E.2d 515, 518 (S.C. Ct. App. 1986) (on similar facts, court states that it "would deny reality" to believe spouse would achieve the standard of living of the marriage). In light of defendant's age, the length of the marriage and her lack of work experience, we hold that as a matter of law defendant is entitled to some amount of periodic maintenance of indefinite duration.[2] This holding is consistent with that of courts in other jurisdictions. See Krauskopf, *Rehabilitative Alimony: Uses and Abuses of Limited Duration Alimony*, 21 Fam. L.Q. 573, 579 (1988) ("The overriding effect of the recent cases . . . is that limited-time alimony is abused when applied to traditional homemakers in lengthy marriages").

In reaching this holding, we recognize that one of the purposes of rehabilitative maintenance is to provide an economic incentive for the recipient spouse to achieve self-sufficiency. Although we doubt that the level of maintenance that can be supported by plaintiff's income will eliminate the need for defendant to achieve a measure of self-sufficiency on her own, we believe an appropriate mixture of permanent and time-limited maintenance can achieve fully all the objectives of a maintenance award.

*Reversed and remanded.*

---

[2] Defendant argues that she is independently entitled to permanent maintenance under *Downs v. Downs*, 154 Vt. 161, 574 A.2d 156 (1990), to compensate her for her contribution to plaintiff's career as a college professor. There are important distinctions between this case and *Downs*. Defendant did not forego her career to put plaintiff through school as in *Downs*. More important, unlike *Downs*, defendant realized the rewards of plaintiff's professional success during the lengthy marriage. We do not believe that the *Downs* holding represents an independent ground for awarding permanent maintenance to defendant.