*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-259

JANUARY TERM, 2014

| | | |
|---|---|---|
| Susan Meredith | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Orleans Unit, |
| v. | } | Family Division |
| | } | |
| Mark Meredith | } | DOCKET NO. 23-11-11 Osdm |

Trial Judge: Howard E. VanBenthuysen

In the above-entitled cause, the Clerk will enter:

Wife appeals from the trial court's final divorce order. She argues that the court erred in dividing the marital estate, failing to award her permanent maintenance, and denying her request for attorney's fees. We reverse and remand.

The trial court found as follows. The parties married in September 1991 and separated in May 2011. They have two children, one of whom is a minor. Wife lives in a home that she purchased post-separation with assistance from her parents. Wife's parents loaned wife money for the down payment and related costs, and wife's parents have made all of the mortgage payments. Parents expect wife to repay this money, and wife has executed a promissory note with respect to these funds. This home is apparently worth $279,500, less the outstanding loans and mortgage.[1]

Husband resides in the former marital home, which the parties had built in 2001. They put considerable "sweat equity" into the home. The home is assessed at $518,300 for property tax purposes, and it was appraised at $525,000 in 2009 in connection with a mortgage refinance. Husband presented testimony from a real estate appraiser who valued the home at $395,000. The parties owe $190,207 on the mortgage.

Both parties are both in good health. Wife is 45; husband is 49. Wife has a B.A. degree in communications. She has not worked out of the home since the marriage, in part pursuant to an agreement between the parties that she remain at home and care for the children. Husband preferred that wife not work outside the home. Husband is a surgeon, presently earning approximately $395,000 per year. He earns additional income by performing cosmetic and other out-patient procedures, and he also receives compensation for unused vacation time. He earned $424,252 in 2012, and projected his 2013 income as $400,368. He receives free health insurance and free life insurance through his work. Husband is on call once every three to four days for twenty-four hours at a time.

---

[1] The court made no finding as to the home's value or any equity in the home.

During the marriage, the parties and their children enjoyed an upper-class lifestyle. They lived in a large home, took luxury vacations, had a boat, motorcycles, and four vehicles. As the trial court found, "They wanted for nothing and bought what they wanted." In addition to other assets, the parties owned a time-share in Florida. The purchase price was $25,000. The court valued the time-share at $21,000, less a $16,659 mortgage.

Based on these and other findings, the court concluded as follows. This was a long-term marriage in which the parties accumulated about $1.2 million in property and assets. Wife's role as a homemaker and primary caregiver enabled husband to pursue his career. Husband was the primary economic engine of the marriage. Given that wife had not worked outside the home in twenty years, she had not acquired any of the relevant skills that her peers had likely developed. The court found that husband had a far greater likelihood and ability to continue earning a very high salary, and he was far more likely to acquire capital assets in the future. The court reiterated that wife played a major role in enabling husband to achieve his high income and status.

The court allocated the assets slightly in husband's favor, finding that the creation of these assets was more dependent on his high income than on wife's efforts. It awarded each party their current residence. Given that there was almost $260,000 of equity in the marital home, and in recognition of wife's sweat equity and role as a homemaker, the court awarded her $25,000 of this equity. Each party was awarded the motor vehicles in his or her possession. The court equally divided the parties' retirement accounts. The parties also received equal shares of a pending lost-wage claim arising out of an accident husband suffered during the marriage. The court awarded wife the Florida time-share, which had $4500 in equity. The court found that wife received 43% of the marital estate, while husband received 57%.

The court explained that wife had requested maintenance, amounting to income equalization, for a reasonable time. Wife was presently receiving $8500 per month in temporary maintenance, which she testified had been sufficient to meet her needs. As stated above, the court found that the parties enjoyed an upper-class lifestyle during the marriage. Husband continued to live in the 5000-square-foot marital home, and his income was unchanged. Wife's circumstances, by contrast, had changed for the worse. She has no income, and the court found that she needed a period of time to find appropriate employment and to "adjust her standard of living to the new reality of the divorce." The parties' minor child lived with wife and would continue to do so until she turned eighteen. Even taking the property award into account, the court found that wife lacked sufficient income and property to enable her to meet her reasonable needs. It observed that wife was young and healthy enough to start a career and work for another twenty years. The court concluded that rehabilitative maintenance was appropriate to allow wife to get back on her feet, emotionally and economically. Because the parties had agreed to a modest child support order, the court found it appropriate that maintenance be paid at its highest levels while the minor child remained living with wife. To this end, the court awarded wife nine years of rehabilitative maintenance as follows: $8000 per month for three years; $5000 for the next three years; and $2500 for the final three years. The court found that this schedule was reasonable and necessary for wife to obtain appropriate employment and to adjust her lifestyle accordingly.

Finally, the court turned to wife's request that husband pay a share of the $28,000 in attorney's fees that she had incurred. The court denied the request, finding that wife had failed to show bad-faith or misconduct by husband. Wife filed a motion to reconsider, which the court largely denied.[2] This appeal followed.

Wife first argues that the court erred in its award of maintenance. She asserts that the court should have awarded her permanent maintenance given the parties' long-term marriage, wife's contributions as a homemaker and primary caregiver for the children, and her inability to become self-supporting at the standard of living established during the marriage.

We agree that the court's maintenance decision is flawed. As the trial court found, this was a long-term marriage. By agreement, wife was a homemaker and primary caregiver for the children for nearly twenty years. She played a "major role" in enabling husband to pursue his career and achieve his high income. Despite its recognition of these contributions, the court awarded wife only nine years of rehabilitative maintenance, declining in amount every three years.

As we have explained, "spousal maintenance is intended to correct the vast inequality of income resulting from the divorce, and to equalize the standard of living of the parties for an appropriate period of time." Strauss v. Strauss, 160 Vt. 335, 338 (1993) (citations omitted). Spousal maintenance serves two purposes: reducing the financial impact of divorce, and compensating a homemaker for contributions to the family's well-being. Naumann v. Kurz, 152 Vt. 355, 359 (1989). "Both of these purposes are to be met within the context of the standard of living achieved during the marriage." Id. The "compensatory aspect of maintenance reflects the reality that when one spouse stays home and raises the children, not only does that spouse lose future earning capacity by not being employed . . . but that spouse increases the future earning capacity of the working spouse, who, while enjoying family life, is free to devote productive time to career enhancement." Delozier v. Delozier, 161 Vt. 377, 382 (1994); see also Russell v. Russell, 157 Vt. 295, 299 (1991) ("[I]n a long-term marriage, maintenance serves more than a rehabilitative function; it also compensates the contributions of a homemaker to the family's well-being."). The purpose of rehabilitative maintenance, by contrast, "is to assist the recipient-spouse in becoming self-supporting." Strauss, 160 Vt. at 339.

We have emphasized that "rehabilitative maintenance alone [is not] sufficient unless the court can find, based on the evidence, that [a spouse] will be able to support herself at the standard of living established during the marriage." Klein v. Klein, 150 Vt. 466, 476 (1988); see also Delozier, 161 Vt. at 382-83 (citing this holding and recognizing that duration of marriage affects measurement of reasonable needs and length of time maintenance award is required to maintain recipient spouse at that level). The court did not find that its award would allow wife to

---

[2] In ruling on wife's request, the court stated that it "declined" to change its determination of the value of the marital home, indicating that it found husband's appraiser's testimony to be credible. The appraiser valued the home at $395,000. The court does not appear to have made a specific finding as to the value of the marital home in its initial decision. If the value is $395,000, then the court's statement about the equity in the home is wrong. The court found in its initial decision that there was $260,000 in equity. The outstanding mortgage on the home is $190,207. Using the value adopted by the trial court, this results in $204,793 in equity.

support herself at the standard of living established during the marriage, nor would the evidence support such finding. Wife has been out of the workforce for twenty years. She is also the custodian of the parties' minor child. There was no evidence to show that she would be able to obtain employment that would allow her to enjoy the upper-class standard of living established during the marriage within nine years or at any time thereafter. Like the recipient-spouse in Strauss, wife "is a displaced homemaker whose age, gender and lack of employment experience greatly limit her earning potential." 160 Vt. at 341.

The court here found that wife would have to "adjust her standard of living to the new reality of the divorce." That is not what our law requires. Under the court's order, husband continues to enjoy the standard of living established during the marriage—he lives in the large marital home, which has considerable equity, and he earns approximately $35,000 per month. Wife, by contrast, has no income, limited job prospects, and was awarded no income-producing assets. In six years' time, she will be receiving only $2500 per month from husband, while husband takes home more than ten times that amount. It is extremely unlikely that wife will be self-sufficient by the end of the time-limited maintenance award or enjoying a standard of living that even approaches that enjoyed by husband. The court's award does not correct the "vast inequality between the parties' financial positions resulting from divorce." Russell, 157 Vt. at 299 (citations omitted). The duration of its award does not recognize the long-term nature of this marriage. While the court is not obligated to equalize the parties' financial position, its decision must not shortchange one spouse. Klein, 150 Vt. at 477. Wife has been unfairly shortchanged here.

Because the court's maintenance award plainly will not allow wife to "become self-supporting . . . at the standard of living established during the marriage," the award cannot stand. Klein, 150 Vt. at 476; see also Strauss, 160 Vt. at 340-41 (reversing court's award of rehabilitative maintenance to forty-eight year old wife, following long-term marriage, where wife had limited job prospects and award would not allow wife to support herself at standard of living established during marriage). On remand, the court is directed to consider both permanent and temporary maintenance given the fact that this was a long-term marriage and wife's homemaking contributions were extensive and they significantly contributed to husband's earning capacity. See, e.g., Russell, 157 Vt. at 299; Klein, 150 Vt. at 477 (explaining that length of a marriage "is a very important factor in determining the appropriateness and amount of spousal maintenance" because "[t]he longer the marriage, (1) the more the parties have contributed to the joint standard of living, (2) the more both parties have set that standard of living as a measure of their reasonable needs, and (3) the more the earning capacity of the homemaker decreases, often while that of the working spouse increases"). As we recognized in Strauss, "an appropriate mixture of permanent and time-limited maintenance can achieve fully all the objectives of a maintenance award," including giving the recipient spouse an economic incentive to become self-sufficient. 160 Vt. at 342.

It is possible that, in refashioning its maintenance award, the court will need to reconsider its division of the marital estate. We therefore do not address wife's challenge to the distribution of the marital estate at this juncture, except to note that on remand, both maintenance and property division may be altered in the final order. As to wife's challenge to the court's denial of her request for attorney's fees, we agree that the court erred in requiring wife to demonstrate that husband acted bad faith. See, e.g., Braun v. Greenblatt, 2007 VT 53, ¶ 21, 182 Vt. 29

(explaining that in divorce cases, court may award attorney's fees at its discretion "where justice and equity so indicate," and primary consideration in making award is ability of supporting party to pay and financial needs of party receiving award).  Given that the court applied the wrong standard in evaluating wife's request, we reverse and remand its decision on this point as well.

<u>Reversed and remanded</u>.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Geoffrey W. Crawford, Associate Justice

5