**VERMONT SUPREME COURT**
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      25-AP-229



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JANUARY TERM,   2026

| | |
|---|---|
| Rayburn Reed\* v. Melissa Reed | APPEALED FROM: |
| | Superior Court, Franklin Unit, |
| | Family Division |
| | CASE NO. 24-DM-01184 |
| | Trial Judge: Navah Spero |

In the above-entitled cause, the Clerk will enter:

Husband appeals from the parties' final divorce order.  He argues that the trial court erred in granting wife's request for a spousal-maintenance award because its findings did not support a conclusion that the statutory threshold at 15 V.S.A. § 752(a) was satisfied.  We agree, and therefore reverse and remand the court's maintenance award and interrelated property-division award for further proceedings consistent with this order.

The parties married in 2011.  They have two minor children, born in 2014 and 2017.  Husband and wife separated in 2024, and their final divorce hearing was held over two days in March and April 2025.  Prior to the first hearing, the parties filed a stipulated agreement regarding the allocation of parental rights and responsibilities and parent-child contact.  Under that agreement, which the court later approved and incorporated into its final order, the children were to "reside primarily with" wife.  The parties also stipulated to the division of a portion of the marital estate.  The court took evidence on the remaining contested issues, including the equitable distribution of the remaining marital assets and wife's request for a spousal-maintenance award.

The trial court's June 2025 final order included the following findings.  During their thirteen-and-a-half-year marriage, the parties each devoted equal effort to supporting their family.  Both worked outside the home—husband as a truck driver, and wife in the pharmaceutical industry—and both were active and involved parents.  Each contributed, in their own fashion, to their renovation of the marital home.  The value of the home was $349,000.  As to retirement savings, wife had approximately $171,000 in a 401(k) and $2100 in an IRA.  Husband had approximately $141,400 in a 401(k).

The court also made findings as to the parties' earnings over the preceding four years.  It recognized that husband's income was variable due to the nature of his work as a truck driver.  He earned a minimum of $1250 per week, plus a commission based on the quantity and location of his routes.  This typically resulted in weekly earnings of approximately $1800 to $2000—a

total of approximately $86,400 to $96,000 per year, with four weeks of vacation. Husband's 2024 income was inflated by a one-time retention bonus of approximately $36,000, which he received after his employer was purchased by another company. While husband hoped to make between $95,000 and $100,000 in 2025, he noted that the political climate and trade with Canada could affect this. Husband's salary was at or near the top of his earning potential.

Wife earned approximately $67,200 annually and would continue to make at least this much. She was able to make more in 2022 and 2023 because she was working second shift. Near the end of the parties' marriage, they agreed that wife would take a pay cut in order to work a shift that allowed her to be present for the children's after-school sports and other activities. It is no longer possible for wife to work second shift due to the need to provide care for the children without both parties in the same home. Wife has similar earning power to husband, though he has consistently outearned her by around 8-20%. While there is potential for wife to make more, her current role meets her scheduling needs.

The approximate difference between the parties' pay, using the midpoint of husband's estimates, was $28,000. Both earned enough to meet their current expenses and pay significantly toward their respective retirement accounts. Neither spouse contributed to the other's education or increased earning power. Husband and wife were both relatively young and healthy, and each had a similar ability to acquire assets in the future.

Based on these findings, the court concluded that a 50/50 split of the marital estate was fair and equitable. Wife was directed to transfer $15,997.80 to husband to equalize their retirement savings. The marital home was awarded to wife, and she was responsible for paying the mortgage and associated solar loan going forward. The court awarded husband $129,960.52 as his share of the equity in the home. Provided that wife was able to keep the home, as she hoped to do, she was to make amortized monthly payments to husband for his share of the equity over a seven-year period.

The court further determined that wife was entitled to a spousal-maintenance award over a period of seven years because she "reduced her earnings for the purpose of ensuring the children had care in light of [husband's] schedule and she has historically had a lower earning potential." The award had two phases. Wife was to receive $708.33 per month for the first two years following the final order, a period intended to give her time to secure a higher-paying job. For five years after that, the court reduced the amount to $373.33 monthly on the assumption that while wife could earn more money than she currently does within that time, she would still have a historical income disparity as compared to husband. The court explained that this amount was—as wife requested—"an offset" to the monthly payments she was required to make to husband for his equity in the marital home. Husband appealed to this Court.

Trial courts have broad discretion to formulate maintenance awards "within the limits set by Title 15." Buttura v. Buttura, 143 Vt. 95, 99 (1983) (quotation omitted). Section 752 of Title 15 calls for the court to engage in a two-step analysis where a party to a divorce requests maintenance. First, subsection (a) provides that the court "may order either spouse to make maintenance payments . . . to the other spouse" if it finds that the spouse seeking maintenance "(1) lacks sufficient income or property," including property apportioned in the final divorce order, "to provide for his or her reasonable needs; and (2) is unable to support himself or herself through appropriate employment at the standard of living established during the civil marriage or is the custodian of a child of the parties." 15 V.S.A. § 752(a) (emphasis added). "Once the trial court finds grounds for awarding maintenance" under § 752(a), "it has broad discretion in

2

determining the duration and amount" based on its consideration of the nonexclusive factors set forth at § 752(b). Chaker v. Chaker, 155 Vt. 20, 25 (1990).

Here, the trial court purported to assess wife's request for a maintenance award under "the factors in 15 V.S.A. § 752." It addressed several of the § 752(b) factors, including the duration of the parties' marriage, the age and physical condition of the parties, and the statutory maintenance guidelines. See id. § 752(b)(4), (5), (9). The court made no express reference, however, to the "threshold criteria of § 752(a)." Downs v. Downs, 154 Vt. 161, 167 (1990).

Husband argues that because the trial court did not explicitly find that § 752(a) was satisfied, it was without discretion to grant wife's request for a maintenance award. He further contends that the court's finding that wife earned enough to meet her "current expenses" while making significant contributions to her retirement foreclosed any such conclusion.

At the outset, we observe that while the best practice for trial courts awarding maintenance is to explicitly address § 752(a)(1) and (2), failure to do so is not grounds for reversal where we can discern a reasonable basis for the court's decision to award maintenance. See, e.g., Kohut v. Kohut, 164 Vt. 40, 43 (1995) (concluding there was reasonable basis for trial court's decision to award maintenance where plaintiff's need to resort to public assistance "demonstrated an obvious lack of personal income, property, or both, thereby justifying a maintenance award under 15 V.S.A. § 752(a)"). The question before us is therefore whether the trial court's maintenance award is "supported by sufficient findings." Strauss v. Strauss, 160 Vt. 335, 341 (1993). Findings are sufficient if they are "adequate to explain to the parties, and to this Court on appeal, how the family court arrived at its decision." Slade v. Slade, 2005 VT 39, ¶ 5, 178 Vt. 540 (mem.).

Here, the court's findings are not adequate to explain how it determined that § 752(a) was satisfied because it made no findings as to the marital standard of living, the "critical comparison" for purposes of this analysis. Strauss, 160 Vt. at 338 ("The critical comparison is to the standard of living established during the marriage."). Wife argues that § 752(a)(2) is satisfied because the children are to reside primarily with her under the final order. See 15 V.S.A. § 752(a)(2) (calling for court to consider whether spouse seeking maintenance "is unable to support himself or herself through appropriate employment at the standard of living established during the civil marriage or is the custodian of a child of the parties" (emphasis added)). This does not, however, obviate the need for the trial court to determine the standard of living established during the marriage. We have long held that "reasonable needs," described in § 752(a)(1), must be "determined in light of the standard of living established during the marriage." McCrea v. McCrea, 150 Vt. 204, 207 (1988) ("[S]ubsections (1) and (2) of 15 V.S.A. § 752(a), taken together, allow the court to award . . . maintenance where a party lacks sufficient income to provide for his or her own reasonable needs where reasonable needs is determined in light of the standard of living established during the marriage."). Thus, "the family court is authorized to award maintenance" under § 752(a)(1) and (2) only "if the receiving party does not have enough income, through employment or otherwise, or property to provide for his or her reasonable needs at the standard of living enjoyed during the marriage." Watson v. Watson, 2003 VT 80, ¶ 4, 175 Vt. 622 (mem.).

The trial court made findings as to the parties' respective incomes during the final four years of their thirteen-and-a-half-year marriage, as well as the value of their retirement accounts. But it did not make findings shedding light on the marital standard of living. See, e.g., Johnson v. Johnson, 155 Vt. 36, 39 (1990) (describing trial court's finding that parties enjoyed "above-

average standard of living" during marriage where they "skied, purchased high quality clothing, enjoyed superior diet, dined out frequently, acquired many material possessions, lived in an above-average neighborhood, had excellent housing, and enjoyed a sufficient income so that plaintiff did not need to work outside the home"). This Court "will not speculate as to the basis upon which the [trial] court . . . reached its conclusions, where the court's decision does not spell out this basis." Kanaan v. Kanaan, 163 Vt. 402, 407 (1995). As a result, we must reverse and remand the maintenance award. See, e.g., Naumann v. Kurz, 152 Vt. 355, 362 (1989) (holding trial court "erred by not making findings that establish the marital standard of living" and that absence of these findings and findings regarding reasonable needs of spouse seeking maintenance "contributes to an unfair award and therefore constitutes reversible error"); Strauss, 160 Vt. at 340 (reversing and remanding maintenance order where the Court could not "find a recognition of the important factors in the trial court's decision").

This is not to say that the court's existing findings compel the conclusion that wife is not entitled to maintenance. Contrary to husband's assertion, it is entirely possible that wife is able to meet her "current expenses" and pay significantly toward her retirement accounts while nonetheless being unable to support herself at the standard of living established during the parties' marriage. See, e.g., McCrea, 150 Vt. at 207 (explaining that "[a]lthough plaintiff earns enough to support herself well over the poverty level, subsections (1) and (2) of 15 V.S.A. § 752(a), taken together, allow the court to award separate maintenance where a party lacks sufficient income to provide for his or her own reasonable needs where reasonable needs is determined in light of the standard of living established during the marriage."); Klein v. Klein, 150 Vt. 466, 474 (1988) ("We must judge the need for spousal support, not in relation to subsistence, but instead in relation to the standard of living established during the marriage."). But in the absence of a finding establishing the marital standard of living, this "critical comparison" simply cannot be drawn. Strauss, 160 Vt. at 338.

Because the maintenance award and the court's property division order are expressly linked through the "offset" provision for husband's home-equity award, this conclusion necessitates reversal and remand of the property award so that the trial court may have leave to revise if necessary. See, e.g., Downs, 154 Vt. at 168 ("[B]ecause the property division and maintenance award are so closely related, the property division must be vacated in order to allow the trial court leave to revise it if necessary" (citation omitted)).

The family division's spousal-maintenance and property awards are reversed and remanded for further proceedings consistent with this decision.

BY THE COURT:

<br>

Paul L. Reiber, Chief Justice

<br>

Harold E. Eaton, Jr., Associate Justice

<br>

Nancy J. Waples, Associate Justice

4