## Ann L. Chaker v. Mouhanad Chaker

[581 A.2d 737]

No. 88-357

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed August 10, 1990

*Jarvis and Kaplan,* Burlington, for Plaintiff-Appellee.

*Paul R. Morwood,* Burlington, for Defendant-Appellant.

**Dooley, J.** This divorce action is here for the second time. Following our reversal of the 1985 order, the matter was heard on the merits during July and August of 1987, resulting in ex-

tensive findings and an order and decree resolving the property and maintenance issues presented by the parties. Defendant, Mouhanad Chaker, appeals, alleging two errors in the award of maintenance: (a) the court abused its discretion in including a maintenance escalation clause based solely on defendant's income; and (b) the court abused its discretion in awarding permanent maintenance. Defendant also argues that the court committed error in calculating the arrearages owed by defendant and in ordering defendant to pay plaintiff's attorneys' fees. We affirm the maintenance and attorney fees award but vacate and remand the arrearage and related property award.

The following is a summary of the relevant facts, based on extensive findings made by the trial court. Neither party has challenged these findings.

Plaintiff Ann Chaker, who is now fifty-five years of age, met defendant, now age thirty-nine, when he was attending an English language program at the University of Oklahoma as a foreign student from Syria. At the time the parties met, plaintiff owned and ran a rooming house for university students. They were married in July of 1975 (her fifth marriage, his first) and lived in Oklahoma until they moved to Pittsburgh, Pennsylvania in 1977 so that defendant could pursue a graduate degree. In 1979, they came to Burlington, Vermont where defendant started a job with IBM. They separated in 1984 and had no children.

The parties have never had great income or owned extensive property although defendant made about $45,000 per year when the divorce hearing was held in 1987. The trial court concluded that each party had contributed "approximately equally to the marital estate since the date of the marriage." Plaintiff's main contribution appears to be the proceeds from the sale of her Oklahoma rooming house. Defendant's main contribution appears to be his income since he became employed in 1979.

At the time of the marriage, the main asset of the parties was a home in Burlington, valued at $88,000, with an equity of about $45,000. Defendant was entitled to a pension at IBM, but it had not yet vested and there was no evidence of its value. Similarly, defendant had available a life insurance policy of uncertain

value. The only other assets of the parties were personal property, including two automobiles.

Although she is a college graduate, plaintiff has not worked outside the home, but she helped defendant during his education, particularly with typing. At the time of the separation, plaintiff had an independent income of $670 per month, the bulk of which is a social security disability payment. Despite her receipt of disability benefits, plaintiff is capable of working and earning an income of approximately $1200 per month. Her monthly living expenses are about $1500 per month, including mortgage payments on the Burlington home.

Defendant's gross income from IBM of $45,000 per year is expected to increase in the future. His monthly living expenses at the time of the divorce hearing were about $1600 per month.

Plaintiff commenced this divorce action in 1984. A temporary hearing was held in September of 1984, resulting in an order giving plaintiff possession of the house and requiring defendant to pay the mortgage, taxes and insurance payments for the house. The order also required defendant to pay temporary maintenance of $625 per month, to cover plaintiff on his IBM health insurance policy and to maintain plaintiff as beneficiary on his IBM life insurance policy.

The final hearing was held in 1985 and resulted in a final order in May of that year. The order awarded the house to plaintiff and required defendant to pay maintenance at the rate of $1000 per month. It required defendant to maintain health insurance coverage for plaintiff and to maintain plaintiff as the beneficiary of the life insurance policy. It concluded that defendant had failed to pay $4883.31 under the temporary order and assessed this as an arrearage. It required defendant to pay plaintiff's attorneys' fees of about $5000.

Defendant appealed the final order, arguing that the court committed reversible error in allowing his counsel to withdraw during the merits hearing. This Court agreed and reversed and remanded for a new trial. *Chaker v. Chaker*, 147 Vt. 548, 520 A.2d 1005 (1986). The retrial was held in 1987 and resulted in a new order and decree on June 16, 1988. Plaintiff was awarded the Burlington home, but defendant was awarded a half interest

in the equity or $22,500. Plaintiff was awarded maintenance of $700 per month for life or until she remarried or cohabited with an unrelated male. The maintenance award was increased yearly by the same percentage as defendant's gross annual income increased. Defendant was required to maintain plaintiff as his sole beneficiary on his life insurance policy and to cover plaintiff through his IBM health insurance policy.

The court found that since the 1985 order was reversed by this Court, arrearages should be calculated under the prior temporary order. On this basis, the court found that defendant owed an arrearage of $22,352. Since this amount was close to the value of defendant's equity in the Burlington house, the court offset one against the other. Thus, if defendant failed to pay the outstanding arrearage within thirty days, defendant's interest in the home was extinguished. Finally, defendant was required to pay plaintiff's attorneys' fees of $9,388.47 accrued up through the final hearing.

We start with the maintenance issues and consider first defendant's challenge to the award of permanent maintenance. On this point, defendant argues that the court abused its discretion in awarding permanent maintenance of $700 per month in view of its findings that plaintiff's reasonable living expenses were between $1500 and $1600 per month and she was capable of earning $1200 per month.

The relevant statute allows an award of maintenance, either rehabilitative or permanent, to a spouse where the court finds: (1) the spouse lacks sufficient income and/or property to "provide for his or her reasonable needs" and (2) the spouse is unable to support himself or herself "through appropriate employment at the standard of living established during the marriage." 15 V.S.A. § 752(a). The maintenance must be in the amount and for the duration the court deems just, based on the consideration of seven nonexclusive factors. See 15 V.S.A. § 752(b). Part of the purpose of the statute is to provide spousal support in relation to the standard of living established during the marriage. See *Klein v. Klein*, 150 Vt. 466, 473–74, 555 A.2d 382, 387 (1988) (*Klein I*); *McCrea v. McCrea*, 150 Vt. 204, 207, 552 A.2d 392, 394 (1988) (reasonable needs as set forth in

§ 752(a)(1) are determined in relation to the standard of living established during the marriage). Another purpose is to recompense a homemaker for contributions made during the marriage. We have also recently held that the statute is flexible enough to allow its use in appropriate cases "to balance equities whenever the financial contributions of one spouse enable the other spouse to enhance his or her future earning capacity." *Downs v. Downs*, 154 Vt. 161, 166, 574 A.2d 156, 159 (1990).

■ Once the trial court finds grounds for awarding maintenance, it has broad discretion in determining the duration and amount. See *Klein I*, 150 Vt. at 472–73, 476, 555 A.2d at 386, 388. A maintenance award will be set aside only if there is no reasonable basis to support it. See *Quesnel v. Quesnel*, 150 Vt. 149, 151, 549 A.2d 644, 646 (1988). In *Downs v. Downs*, 154 Vt. at 166, 574 A.2d at 159, we emphasized the breadth of the trial court's power in concluding that it could consider the increased earning capacity of a professional degree in determining an award of maintenance where the spouse's contribution to obtaining the degree is not reflected in the property award.

The breadth of the trial court's discretion is further demonstrated by two cases with facts similar to this case. In *Buttura v. Buttura*, 143 Vt. 95, 463 A.2d 229 (1983), we affirmed an award of permanent alimony in the face of an argument that plaintiff was meeting her reasonable needs through employment. In doing so, we relied upon "the vast inequality between the parties' financial positions." *Id.* at 99, 463 A.2d at 231. In *Belanger v. Belanger*, 148 Vt. 202, 204–05, 531 A.2d 912, 914 (1987), we affirmed time-limited rehabilitative maintenance in similar circumstances where the trial court's purpose was to give plaintiff the opportunity to establish herself financially since she had marketable skills.

■ A number of factors support the award of permanent maintenance in this case. Although the court found that plaintiff is capable of employment, she is 55 years of age and has not worked outside the home for many years. See 15 V.S.A. § 752(b)(5). She has a back problem for which she receives social security disability payments. The trial court found that

plaintiff would lose her social security disability benefits if she went to work. It also found that defendant's earning capacity was "easily three times that of plaintiff" and would become "easily . . . five times that of the plaintiff." In addition, plaintiff was the homemaker and supported defendant's efforts to learn English and become educated in the United States to obtain the earning capacity he now enjoys. The trial court evaluated each of the factors in § 752(b) and determined that its maintenance award was necessary to keep plaintiff in the standard of living established during the marriage. We conclude that the trial court acted within its discretion in awarding permanent maintenance to plaintiff in the amount it did.

Defendant next challenges the escalation clause in the maintenance award. It required an annual increase in the maintenance award by the same percentage as the increase in defendant's gross income, exclusive of capital gains from investments. Defendant argues that the provision represents an improper, annual modification of the maintenance award without showing a real, substantial and unanticipated change of circumstances.

We have considered the validity of escalation clauses in *Roya v. Roya*, 145 Vt. 488, 494 A.2d 132 (1985). In *Roya*, the escalation clause applied both to child support and to maintenance and was based on increases in the cost of living. This Court noted that the Legislature had specifically authorized the courts to consider "inflation with relation to the cost of living" in making maintenance awards. *Id.* at 490, 494 A.2d at 133–34; see 15 V.S.A. § 752(b)(7). We held that the escalation clause did not constitute an "invalid modification" of the order. *Id.* Rather, we found it to be a practical method of assuring that buying power continued over time. We noted that the clause results in judicial economy, reduces expenses for attorney fees and does not interfere with the ability of either party to seek modification. *Id.* at 490–91, 494 A.2d at 134. On this basis, we upheld the use of the escalation clause.

Defendant argues that this case is not governed by *Roya* because the annual increase is based on defendant's income and not on the cost of living. Thus, in defendant's view, it goes be-

yond the authorization to consider the cost of living in § 752(b)(7) and represents an invalid authorization for a prospective modification without a showing of change of circumstances.

■ Whatever terms are used for an escalation clause, *Roya* answers defendant's modification argument. If an escalation clause based on one factor is not an authorization for an improper prospective modification, then an escalation clause based on another is not such a modification. The modification argument goes to the fact of an escalation clause, not to the adjustment factor used in such a clause. Thus, we must evaluate the escalation clause under our traditional standard of review for maintenance orders and determine whether the inclusion of the clause was an abuse of the wide discretion accorded the trial judge. See *Klein I*, 150 Vt. at 472–73, 555 A.2d at 386.

As *Roya* emphasizes, the advantage of an escalation clause keyed to the cost of living is that it assures that the recipient's buying power will be maintained over time. *Roya*, 145 Vt. at 490, 494 A.2d at 134. On the other hand, use of cost of living alone does not assure that the payor's income will rise to enable him or her to make the payments. Thus, while it considers one factor, it wholly ignores another that may be crucial in a particular case.

An escalation clause based on increases in income has the same type of advantages and disadvantages although the impact is different. Such a clause ensures that increases in maintenance will mirror increases in the payor's income, but does not ensure that these increases are caused solely by the cost of living. As defendant argues, some courts have refused to accept escalation clauses based on increases in the payor's income although they have endorsed escalation clauses based on the cost of living. See, e.g., *Brevick v. Brevick*, 129 Ariz. 51, 54, 628 P.2d 599, 603 (Ct. App. 1981). Others, however, have endorsed escalation clauses based on income increases while criticizing those based on cost of living as not ensuring the ability to pay. See, e.g., *Mills v. Mills*, 417 So. 2d 298, 299 (Fla. Dist. Ct. App. 1982); *Edwards v. Edwards*, 99 Wash. 2d 913, 918–19, 665 P.2d 883, 886 (1983). We find most persuasive the opinions that allow

escalation clauses based on income increases in appropriate cases. See *Lawler v. Lawler*, 16 Conn. App. 193, 196–200, 547 A.2d 89, 91–92 (1988); *Heinze v. Heinze*, 122 N.H. 358, 361, 444 A.2d 559, 562 (1982); *Petersen v. Petersen*, 85 N.J. 638, 643–44, 428 A.2d 1301, 1303 (1981). For two reasons, we believe that the use of an escalation clause based on income was appropriately within the trial court's discretion in this case.

First, the parties have been locked in continuous litigation for years, and defendant has rarely abided by any of the maintenance awards imposed upon him. There is every reason to believe that if inflation erodes the value of plaintiff's maintenance award or defendant has a substantial increase in income, the parties will be back in court locked in another protracted, acrimonious battle. Thus, the gains in terms of judicial economy and reduction in attorney fees are more than hypothetical given the history of this litigation. Of course, defendant can seek to modify the maintenance order if he believes its operation over time becomes unfair. The escalation clause gives plaintiff a secure starting point from which defendant must argue that a change of circumstances has occurred.

■ Second, this is a case where the maintenance award is and must be based on more than plaintiff's support needs. Plaintiff's contribution to defendant's education, as well as her service as a homemaker, entitle her to some share of his enhanced earning capacity. Since the maintenance award is intended in part to enhance plaintiff's standard of living in relation to that of defendant, it is appropriate that the escalation clause be based on increases in defendant's income.

The next issue deals with the calculation of the maintenance arrearage. In the trial court, the parties argued about the outstanding arrearage based on their respective views of the effect of the 1985 final order. The trial court found that the final order had no effect because it had been overturned by this Court. The trial court further found that since the earlier final order was not in effect, the rights and liabilities of the parties were determined by the temporary order of October, 1984. This order required the defendant to pay temporary maintenance of $625 per month plus the ongoing cost of the house, including the mort-

gage, taxes and insurance (totaling $630 per month). When payments were credited, the court calculated an outstanding arrearage of $22,352, almost twice the amount sought by the plaintiff. Defendant challenges the arrearage calculation, arguing that the temporary maintenance order had no force after the issuance of the final order of May, 1985.

The court's power to award temporary maintenance is contained in 15 V.S.A. § 594a. The statute authorizes such an order "pending final hearing and further order of the court." Obviously, the intent of the statute is that the temporary order will be replaced by a final order. This is consistent with the general law that temporary maintenance orders merge into, and are superseded by, the final order. See *Wetmore v. Wetmore*, 129 Vt. 583, 585, 285 A.2d 711, 713 (1971); see also *Saunders v. Saunders*, 140 Conn. 140, 146, 98 A.2d 815, 818 (1953) (order for alimony pendente lite is interlocutory and terminates with the judgment which follows it); *Button v. Button*, 222 A.2d 245, 247 (Me. 1966) (support and alimony decree pending the action terminated on entry of the final decree). At one time, however, the final order was stayed pending appeal, creating the necessity for some sort of temporary order during the appeal. See *Walker v. Walker*, 123 Vt. 430, 431, 192 A.2d 460, 461 (1963); see also *Jack v. Jack*, 253 Pa. Super. 538, 543–44, 385 A.2d 469, 472 (1978) (since the filing of an appeal stays the final decree, an award of alimony pendente lite remains in effect during the appeal). Since the advent of our rules of civil procedure, the final order providing for maintenance has remained in effect during an appeal. See V.R.C.P. 62(a), (e).

The trial court's position is consistent with the statute and the proper effect of a temporary order only if the final order became effective with respect to maintenance on the day it was issued—that is, on June 16, 1988. The argument in support of this position would be that there was no final order from May, 1985 through June 16, 1988, since the one that existed was reversed, and therefore nullified, by this Court. The argument depends on a conclusion that the trial court's 1988 order was prospective only.

Our precedents do not establish an effective date for maintenance orders, and the statutes are silent on the subject. We have, however, recently established how the effective date of a child support order must be chosen. In *Towne v. Towne*, 150 Vt. 286, 288–89, 552 A.2d 404, 406 (1988), we held that an order modifying a child support award could be effective as early as the date on which the motion to amend was filed. We added, however, that the trial court had discretion to chose any reasonable date after the date of the filing of the motion based on a consideration of the circumstances of the parties. *Id.* The *Towne* holding was applied in *Klein v. Klein*, 153 Vt. 551, 556–58, 572 A.2d 900, 903–05 (1990) (*Klein II*), where the issue was the establishment of an initial support order. The case had been before this Court once before, and we had held that the trial court erred in failing to create a specific child support award. By the time of the remand hearing, the child had turned eighteen and the trial court found the child support issue to be moot. We concluded that the effective holding of *Towne v. Towne* should be applied to the establishment of an initial award so that the court could go back to the date the divorce was filed to award an arrearage. We reversed again because the record showed that the court had failed to exercise any discretion in determining the effective date of a child support award and in considering whether an arrearage was owed. *Id.* at 557–58, 572 A.2d at 904–05.

▉▉ We see no reason to distinguish between maintenance awards and child support awards for purposes of setting an effective date. Thus, under *Klein II*, the court here had discretion to make its final award retroactive at least to the date of the initial hearing.[1] To the extent it made the permanent mainte-

---

[1] We need not consider on this record whether the court could establish a retroactive maintenance award covering the period for which the temporary award was in effect and superseding that award. We note that 15 V.S.A. § 606 gives the party entitled to temporary maintenance the right to reduce any arrearage under the temporary maintenance order to a judgment order, and the court may not reduce the amount owed. See *Forte v. Forte*, 143 Vt. 518, 521, 468 A.2d 561, 562 (1983). Neither party has sought retroactive modification of the temporary award, and the original determination of the

nance award retroactive, the arrearage would be calculated under that award and not under the temporary award. As in *Klein II*, the court here did not indicate that it had the power to make a retroactive award of permanent maintenance and, thus, it did not exercise the discretion available to it. In the absence of the exercise of discretion, we must remand for a further hearing on the arrearage issue. See *id.*[2] Because the court offset the arrearage against the amount plaintiff was required to pay to defendant to extinguish defendant's equity in the house, we must also hold the disposition of the real property in abeyance until the arrearage issue is determined.

The last issue deals with the award of attorney fees. Defendant contests both the amount, over $9000, and the use of an immediate wage assignment to require payment at $500 per month. He argues that he is unable to pay both the attorney fee and maintenance award.

■ ■ The trial court had discretion in awarding attorney fees based on its evaluation of the financial circumstances of the parties. See *Cleverly v. Cleverly*, 151 Vt. 351, 358, 561 A.2d 99, 103 (1989). The findings and conclusions indicate the court analyzed the capacity of each party to pay in reaching its decision. See *Bissonette v. Gambrel*, 152 Vt. 67, 72, 564 A.2d 600, 602

---

arrearage under that order, made in May 1985, was apparently uncontested.

[2] This case is a good example of why the trial court should have discretion to determine the effective date of the permanent award and, as a result, the termination date of the temporary award. The differences in the court orders have been influenced to a great degree by the disposition of the house. The temporary order could not determine title to the house and, in the interim, required defendant to pay the mortgage, title and insurance. Much of the arrearage results from his failure to make many of these payments. The 1985 final order awarded the house to plaintiff and removed the requirement that defendant pay the expenses for a house he no longer owned. The 1988 order awarded the house to plaintiff but divided the equity between the parties. Again, defendant was not required to pay the expenses of the house.

The trial court's arrearage order, in effect, requires defendant to pay for the expenses of the house from May of 1985 to June, 1988. This may be a fair allocation of financial responsibility since plaintiff has not been able to obtain title to the house during the litigation. On the other hand, we cannot determine on this record the significance of the absence of title. Plaintiff has apparently had possession of the house and lived in it during this period.

(1989). We find no error in the findings, nor in the court's conclusion that defendant has the ability to pay.

 Nor do we find error in the use of a wage assignment to secure payment. Defendant has rarely made voluntary payments under the various orders issued in this case. Only through wage assignments has plaintiff been able to obtain the benefit of the awards. In view of this record, the court acted within its discretion in making a periodic payment order enforceable by a wage assignment.

*Except as it relates to the disposition of the real estate of the parties and the calculation and payment of arrearage, the final order and decree is affirmed. The order with respect to the disposition of the real property and the calculation and payment of arrearage is reversed and remanded for further proceedings consistent with this opinion.*