*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2010-197

MARCH TERM, 2011

| | | |
|---|---|---|
| Jodi Milko | } | APPEALED FROM: |
| | } | |
| v. | } | Windham Family Court |
| | } | |
| James J. Milko | } | DOCKET NO. F260-8-08 Wmdm |

Trial Judge: Katherine A. Hayes

In the above-entitled cause, the Clerk will enter:

Husband appeals from the family court's final divorce order. He argues that the court erred in dividing the marital estate and awarding spousal maintenance. We affirm.

The parties married in 1990, and wife filed for divorce in 2008. Following a three-day divorce hearing, the court issued a written order dividing the marital estate and awarding wife permanent spousal maintenance. The court found as follows. At the time of the final divorce order, wife was forty-six years old and husband was forty-seven. Both are in good physical health, although husband had a slight reduction of the use of his arm from a 2007 injury. The parties have an eighteen year old daughter who graduated from high school in June 2009 and was living with mother; husband also acted as a step-parent for mother's older daughter. The court found that husband had begun a relationship with his current girlfriend many months before he and wife separated. Wife attempted to resolve the issues in the marriage after learning of the affair, but husband refused.

Turning to the parties' assets, the court found that they owned a home worth $110,000, with a net value of $51,652. They also had various vehicles, some of which had no equitable value due to outstanding loans. The court identified other personal property items as well. In addition wife had a retirement account worth $6326. Husband had three retirement accounts, two of which he had liquidated in early 2009, receiving approximately $28,000 after taxes. Husband used this money to pay outstanding medical bills of $3339 for himself and the parties' child, child support of $5752, overdue mortgage payments and penalties of $6000, and legal fees of $4413. He used the balance of these funds—approximately $11,000—to pay his regular expenses. Husband had one remaining retirement account worth $494 and a life insurance policy with a cash value of $681. The parties had various credit card debts, car loan debts, and personal loan debts.

The court found that wife worked as a teacher's aide, earning $1762 per month. Her monthly expenses were approximately $2900, and she no longer enjoyed the marital standard of living. Since the separation, wife had to cut back on food, eating out, clothing, gifts, and travel. Husband worked as a diesel truck mechanic for nearly twenty years. During the marriage, he

often worked multiple jobs. He was laid off in November 2009, but found new employment in December 2009 and earned $3120 per month. Husband lived with his girlfriend in a house that she owned. He did not pay rent but paid approximately $800 per month for household bills, as well as a portion of the grocery bills. Husband claimed other expenses of $1200 per month. The court noted that, unlike wife, husband was able to eat out and go out to drink and dance once a week. Husband's girlfriend also took him on a five-day Caribbean cruise in 2009.

Based on these and other findings, the court considered the factors set forth in 15 V.S.A. § 751. It found that this was a long-term marriage and the parties' assets had a total net worth of $60,255. In determining this amount, the court included the value of the retirement accounts liquidated by husband, although it also included as legitimate liabilities the mortgage payments and medical bills that he paid with these funds. The court did not include as legitimate debts the child support or attorney's fees because they were clearly not joint debts and it was inappropriate for husband to have used a marital asset to pay such debts without consent from wife or the court. The court found that husband had nearly twice the earning capacity of wife, and a much greater capacity for future acquisition of assets. His social security income would also be much higher than wife's would be. Additionally, the court noted that husband had established a new relationship with someone who owned her own home and had steady employment. In his current situation, he had relatively low living expenses and access to real estate. Wife was not in a similar position. The court found that the parties' daughter continued to reside at home and that she was legitimately somewhat dependent on wife for housing, food, and other resources given her limited earnings and college plans. The court considered this as a factor in determining how to allocate or divide the marital residence.

The court recognized that husband chose to end the parties' relationship, but it did not find that his conduct was intentionally cruel or abusive. It did not conclude that his actions warranted any significant adjustment of the division of the marital estate. Instead, it held that the division of the marital estate must be adjusted to account for husband's unauthorized disposition of the retirement accounts and for his much greater ability to earn and obtain additional assets in the future. To this end, it awarded wife the marital home, with the requirement that she provide husband $14,000 of its equitable value by 2013. The court credited husband with the full after-tax value of the liquidated retirement accounts as part of his property award, and awarded him his remaining retirement account and life insurance policy. Wife received her own retirement account. Additionally, each party retained the vehicles in his or her possession and financial responsibility for those vehicles. Husband was awarded his diesel mechanic tools, a motorcycle, a plow truck (if it was still in wife's possession), a pickup truck bed, and a dirt bike, while wife received a lawnmower. Each party was responsible for his or her own credit card debts, personal loans, and attorney's fees. The court explained that the intended effect of the above awards was to divide the marital estate roughly equally.

As to spousal maintenance, the court found that wife did not have the ability to meet her own needs based on her own income alone and that she could not maintain the standard of living enjoyed during the marriage. It considered the factors set forth in 15 V.S.A. § 752, and awarded permanent maintenance of $700 per month, to be reduced to $500 per month when wife turned sixty-seven. Husband appeals from the court's order.

2

Husband asserts that the court improperly based its decision on the fact that he had an extramarital relationship and was living with his girlfriend. He points to the court's recognition that he shared monthly expenses with his girlfriend, as well as the effect that his relationship had on his standard of living, his ability to acquire future assets and income, and his ability to pay maintenance. Husband argues that the "totality of the decision" indicates that the court may have been trying to punish him for finding a new relationship. In a related vein, he argues that the court's findings indicate a predisposition toward wife's case. He objects to the court's finding that wife had lost seventy-five pounds due to emotional anxiety—not because it is factually inaccurate but because he alleges that the court failed to adequately acknowledge that he suffered an arm injury in 2007. Husband maintains that the court "misunderstood" the evidence in other ways as well, including its assessment of: the parties' work capacities; wife's expenses, income, and ability to earn income in the future; husband's assault of wife's oldest daughter; evidence regarding vacations during the marriage, the value and existence of various vehicles, and his willingness to engage in marital counseling. He asserts that these errors, as well as the court's failure to include wife's tax refund as income, led to a miscalculation of his spousal maintenance obligation. Finally, he argues that the court erred in awarding wife the marital home and in assessing the value of this property.

As we have often repeated, the family court has broad discretion in dividing marital property, and we will uphold its decision unless its discretion was abused, withheld, or exercised on clearly untenable grounds. Chilkott v. Chilkott, 158 Vt. 193, 198 (1992). The party claiming an abuse of discretion bears the burden of showing that the trial court failed to carry out its duties. Field v. Field, 139 Vt. 242, 244 (1981). We have noted that the distribution of property is not an exact science and, therefore, all that is required is that the distribution be equitable. Lalumiere v. Lalumiere, 149 Vt. 469, 471 (1988).

Husband fails to show that the court abused its discretion here. As presented above, the court properly considered the factors set forth by statute, weighed the evidence, and divided the marital estate in a roughly equal fashion. Wife received approximately $44,000 of the parties' assets, while husband received approximately $39,000. There is no support for husband's assertion that the court was trying to punish him for having a girlfriend, or that it was predisposed to wife's case. Indeed, the court expressly stated that husband's extramarital affairs did not warrant any significant adjustment to the property award. Certainly, it was appropriate for the court to consider husband's current living situation in assessing his financial obligations and needs and his current standard of living. See 15 V.S.A. § 751(b) (in dividing property, court may consider all relevant factors, including liabilities and needs of each party); id. § 752(b)(6) (in determining maintenance amount, court shall consider all relevant factors, including ability of spouse from whom maintenance is sought to meet his reasonable needs while meeting needs of spouse seeking maintenance).

It was also fair for the court to credit husband with the value of the retirement accounts that he liquidated. Husband argues that he was entitled to dispose of these accounts pursuant to a 2008 temporary maintenance and child support order. In that order, a magistrate recognized that husband was temporarily unemployed but scheduled to return to full-time work in April 2009. In discussing husband's $800 maintenance obligation to wife, the magistrate stated that husband "may draw upon his resources to meet his obligations until he is back to work full-time." Husband asserts that the magistrate could only have been referring to the retirement accounts at

3

issue. Yet these accounts did not belong to husband—they were marital property. 15 V.S.A. § 751(a) ("All property owned by either or both of the parties, however and whenever acquired, [is] subject to the jurisdiction of the court."). Indeed, the parties had been directly ordered by the family court in August 2008 not to dispose of any marital assets, including pension plans. As the family court observed during trial, it would be very troubling if the magistrate had issued an order to the contrary. Even if husband somehow could justify taking such action unilaterally, it was certainly equitable for the court to allocate the value of these accounts to husband in dividing the marital estate. See Clayton v. Clayton, 153 Vt. 138, 142-43 (1989) (stating that family court had a duty to consider bona fides of husband's post-separation transfer of assets in assessing value of all property interests of each party under 15 V.S.A. § 751(b)(6)).

The court similarly did not err in determining the value of the marital home, and indeed, husband does not even claim that this finding is clearly erroneous. According to husband, the court should have given more weight to evidence that supported his position on value. As we have often stated, it is the exclusive role of the family court, not this Court, to weigh the evidence. See Kanaan v. Kanaan, 163 Vt. 402, 405 (1995) (explaining that trial court's findings are entitled to wide deference on review because it is in unique position to assess credibility of witnesses and weigh evidence presented). Wife testified that the house was worth $90,000 to $100,000, and she was competent to so testify. See 12 V.S.A. § 1604 ("The owner of real or personal property shall be a competent witness to testify as to the value thereof."). Husband believed it was worth between $125,000 and $135,000. The court acted well within its discretion in concluding that the value lay between these two positions and estimating its value at $110,000. Husband points to a property tax bill as further support for his position on value. This document was excluded on hearsay grounds without objection, however, and husband waived any claim of error on appeal. See Bull v. Pinkham Eng'g Assocs., 170 Vt. 450, 459 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal.").

Finally, husband fails to show that the court erred in awarding wife the marital home while he received a cash portion of the equity. By dividing the estate in this manner, the court did not order husband to support his child past the age of majority by providing her a residence or paying for her college education, as husband suggests. It did not order husband to provide for the child because she was "potentially disabled." The cases cited by husband do not persuade us otherwise. See, e.g., Milligan v. Milligan, 158 Vt. 436, 443 (1992) (in dividing marital estate, family court had no power to order that certain pension funds be used to create educational trust for children's use beyond age of majority); Beaudry v. Beaudry, 132 Vt. 53, 56 (1973) (parent could not be ordered to pay child support once child turned eighteen). The family court may consider all relevant factors in equitably dividing marital property and in determining which party, if either, should receive the marital home. In reaching its conclusion, it was reasonable for the court to consider the fact that the parties' daughter, who had just graduated from high school and planned to attend a local college, was residing with wife. We find no basis to disturb the court's decision. In so concluding, we reject husband's various challenges to the court's assessment of the weight of the evidence and his quibbling over minor facts that have little to no impact on the court's final decision. Husband fails to show that the court abused its discretion in dividing the marital estate.

We similarly reject husband's challenges to the court's maintenance award. The family court may award maintenance, either rehabilitative or permanent, to a spouse when it finds that

4

the spouse lacks sufficient income and/or property "to provide for his or her reasonable needs" and the spouse is unable to support himself or herself "through appropriate employment at the standard of living established during the civil marriage." 15 V.S.A. § 752(a); see Chaker v. Chaker, 155 Vt. 20, 25 (1990). The maintenance must be in the amount and for the duration the court deems just, based on the consideration of seven nonexclusive factors. See 15 V.S.A. § 752(b). Once the family court finds grounds for awarding maintenance, it has broad discretion in determining the duration and amount. Chaker, 155 Vt. at 25. We will set aside a maintenance award only if there is no reasonable basis to support it. Id.

As with the property award, all of husband's arguments go to the court's assessment of the weight of the evidence. None demonstrate that the court's award lacks a reasonable basis. The parties were married for almost twenty years. Wife earns $1762 per month, and she claimed monthly expenses of approximately $2900. This included a monthly mortgage and home equity loan payment of $856, a car lease payment of $300, and a minimum credit card payment of $229. Husband was ordered to pay $700 per month in maintenance. While husband complains, for example, that wife is paying for their child's food and cell phone expenses, the maintenance award in fact falls $500 short of wife's claimed monthly expenses. Husband's remaining challenges, such as whether wife should be credited with the value of her income tax return and whether wife should be expected to work more hours, are of a similar nature. It is for the family court, not this Court, to evaluate the weight of the evidence. We have considered all of husband's arguments and find them all without merit.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

5