*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-095

AUGUST TERM, 2011

| | |
|---|---|
| Linda Mavilla | } APPEALED FROM: |
| | } |
| v. | } Superior Court, Bennington Unit, |
| | } Family Division |
| | } |
| Ralph Mavilla | } DOCKET NO. 239-9-09 Bndm |

Trial Judge: Karen R. Carroll

In the above-entitled cause, the Clerk will enter:

Husband appeals from the family court's final divorce order. He challenges the court's property division and maintenance award. We affirm.

Husband and wife were married in August 1970 and they separated in August 2008. Husband was sixty-one years old at the time of the final divorce hearing; wife was sixty. They have an adult son. Following the hearing, the court distributed the parties' assets and awarded wife permanent maintenance. Husband appeals from this order. We discuss the court's findings in detail below.

Husband first challenges the court's assessment of his monthly expenses, asserting that the court failed to provide a clear statement of what it decided and why. He also argues that several of the court's findings are erroneous.

The family court has broad discretion in dividing marital property, and we will uphold its decision unless its discretion was abused, withheld, or exercised on clearly untenable grounds. Chilkott v. Chilkott, 158 Vt. 193, 198 (1992). We recognize that the distribution of property is not an exact science, and, therefore, all that is required is that the distribution be equitable. Lalumiere v. Lalumiere, 149 Vt. 469, 471 (1988). Nonetheless, the court must also "provide a clear statement as to what was decided and why." Cabot v. Cabot, 166 Vt. 485, 500 (1997).

We find no basis to disturb the court's property division here. Certainly, the record is confusing as to husband's claimed expenses. Two financial affidavits were entered into evidence for husband: one dated October 13, 2009 and another dated September 30, 2010. On the 2009 form, husband claimed expenses of $8468.52; on the 2010 form, he claimed expenses of $6505.83. Husband also testified at trial to revisions of various expenses, such as money spent on gifts, eating out, and hair care. Wife's attorney referred to both financial affidavits at trial, and wife concedes that the trial court appears to have used figures from both financial affidavit forms in calculating husband's expenses.

Not only were there inconsistent forms in evidence, but the claimed expenses on husband's 2010 form appear to contain mathematical errors and other omissions. When one adds husband's claimed monthly loan payments, for example, they total $1362.40 rather than the $1690.42 he indicated on his

financial affidavit. This loan figure is also inaccurate, as the trial court found, because husband included $311.98 for a personal loan that he was no longer paying, and he double-counted his mortgage and car payments.

The trial court determined that husband's monthly expenses were $4778.85. In reaching its conclusion, the court found some of husband's claimed expenses unreasonable and deducted or reduced them accordingly. The court mistakenly combined some elements of the 2009 form and the 2010 form. It found that husband had listed $414 as an expense for contribution to retirement in two places in his financial affidavit. The $414 payment is listed twice on the 2009 affidavit, but it is not included in husband's 2010 financial affidavit. Thus, the court should not have subtracted $414 from the total value of husband's claimed expenses on the 2010 form. The court also referred to husband's claimed monthly loan payments of $1527.17, which was a number used on the 2009 affidavit. (The 2010 form claimed $1690.42 in monthly loan payments, which, when added correctly, should have been $1362.40). The court found that the claimed monthly loan payment included husband's mortgage payment, vehicle payment, and a 401(k) loan payment of $311, values that had already been included on other lines of the financial affidavit form. The court stated that the correct amount for husband's monthly loan payments, not including these payments, was $876. It is difficult to discern how the court arrived at this figure, but it is evident that husband double-counted his car and mortgage payments and included the same $311 payment on both the 2009 and 2010 financial affidavit.

We find these errors harmless because, using husband's claimed expenses as a guide, we arrive at a similar figure for husband's monthly expenses. Husband claimed $6505.83 in expenses on his 2010 financial affidavit, $328.02 of which reflects a mathematical error in calculating his monthly loan obligation. As the trial court found, husband claimed his mortgage payment and car payment twice and claimed $311.98 for a loan that he was no longer paying. This reduces the value of his claimed expenses to $4815.41. Husband appears to have omitted his monthly credit card obligations of $640 from the total expense figure on his 2010 form. These expenses are offset, however, by the $650 in deductions made by the trial court for expenses that it found unreasonable. The resulting value— $4805.41—is almost identical to that found by the trial court.

We reject husband's assertion that the court did not make it sufficiently clear whether it was deducting all or part of his expenses for alcohol and tobacco, charitable contributions, and meals eaten out. The court specifically stated that it deducted the items that were discussed in its findings which husband was not paying or which were stated incorrectly. This includes a reduction in the amount spent on gifts for family and friends and on hair care. The court explained that if it also deducted charitable gifts, which was not a required expense, and reduced husband's expenses for eating out to a reasonable level, his monthly expenses would be $4553.85. The court was not obligated to determine husband's expenses with mathematical precision, and any slight variation as to the exact amount is harmless.

We also reject husband's argument that the property distribution is contrary to the evidence. Husband relies on his own evidence as support for this assertion. He argues, for example, that the court should have adopted his claimed expense of $250 in monthly maintenance for the upkeep of the marital home. The court concluded otherwise, and it acted within its discretion in doing so. See Kanaan v. Kanaan, 163 Vt. 402, 405 (1995) (trial court's findings entitled to wide deference on review because it is in unique position to assess the credibility of witnesses and weigh the evidence presented). As the court explained, the parties refinanced their home in 2001 and received $90,000. Part of this money was used to repair the roof of the marital home and $50,000 was used for a kitchen renovation. Husband refinanced the home again in 2008, after wife moved out, and received $87,400. He used a large portion of this money on himself and his expenses. Shortly before the 2008 refinance, husband also took out a

2

loan from his 401(k) account, spending $13,800 on home improvements. Given all of these expenditures, the court reasonably concluded that husband was not currently paying $250 per month in maintenance.

We similarly reject husband's assertion that the court erred in finding that the "respective merits of the parties" favored wife. Husband asserts that he did not physically abuse wife as the trial court found, although he acknowledges wife's testimony to the contrary. He complains that the court found that he let an insurance policy "lapse," rather than stating that husband chose not to continue paying for it. He also maintains that by controlling the parties' finances and providing wife with $25 a month in spending money, he was trying to help wife rather than control her. All of these arguments go to the court's assessment of the weight of the evidence, a matter reserved exclusively for the trial court. Id. Finally, the record amply supports the court's finding that husband acted as if the marital assets were his own, as discussed in greater detail below. None of husband's arguments demonstrate that the court abused its discretion in dividing the marital estate or that its award is inequitable.

We turn next to the court's maintenance award. According to husband, the court failed to explain how it determined that his monthly income was $5364. He also asserts that the court's decision rests on unrealistic assumptions, such as wife obtaining a driver's license in the future and purchasing a home. Finally, husband argues that wife's standard of living with the maintenance award is higher than the parties enjoyed during the marriage.

The trial court may award maintenance, either rehabilitative or permanent, to a spouse when it finds that the spouse lacks sufficient income and/or property to "provide for his or her reasonable needs" and the spouse is unable to support herself "through appropriate employment at the standard of living established during the . . . marriage." 15 V.S.A. § 752(a); Chaker v. Chaker, 155 Vt. 20, 24-25 (1990). The maintenance must be in the amount and for the duration the court deems just, based on the consideration of seven nonexclusive factors. See 15 V.S.A. § 752(b). Once the family court finds grounds for awarding maintenance, it has broad discretion in determining the duration and amount. Chaker, 155 Vt. at 25. A maintenance award will be set aside only if there is no reasonable basis to support it. Id.

The court found as follows. Husband had been employed by Verizon since 1969. He earned $65,612 in 2008 and $88,454 in 2009. At the beginning of 2010, husband was earning $6274 per month. He retired in June 2010 after being offered a beneficial early-retirement package. Upon his retirement, husband began receiving $1424 per month for four years, which will be reduced to $550 per month for one year thereafter. Husband also received $3400 per month from an annuity and $540 in veteran's benefits. The sum of this monthly income is $5364, the figure used by the trial court.

The court also found that husband received a lump sum payment of $41,770.67 in July 2010 as part of his early retirement package. He used approximately $18,000 of this money for himself until the court ordered that he place the remaining funds into an escrow account. Husband received a lump sum of $2349 from his military pension that he similarly did not share with wife. Husband also took a distribution of $19,000 from his 401(k) plan after the court's interim order had issued and without wife's permission. The court found that husband took over the parties' finances about five years before the parties separated. Wife's income during the marriage went into a joint account. During the marriage, husband would give wife $25 per paycheck for spending money. Husband had given wife no money since the separation.

Turning to wife's circumstances, the court found that she was sixty years old and had completed school through the fifth grade. Wife stayed home with the parties' son until he was seven years old. Wife was the primary caregiver for the parties' son and she cooked and cleaned for the family. She later obtained a licensed nursing assistant (LNA) certificate and began working full-time, with the exception of one year of part-time work. Wife earned $31,270 in 2005; $30,072 in 2006; $29,114 in 2008; and $40,636 in 2009. The increased salary in 2009 was due to overtime shifts, which are no longer available to wife. Wife's current monthly income was $3333. Wife claimed monthly expenses of $4282.69, which the court reduced by approximately $900.

During most of the marriage, wife had no driver's license and relied on friends for transportation. After the parties separated, wife obtained her learner's permit and purchased a car. She was later involved in an accident. She had not repaired the vehicle at the time of the final hearing, nor had she obtained her driver's license. Wife was required to take a driver's education class, and she anticipated that she would need many more classes before taking the driving test. Since the parties separated, wife had been living in a run-down one-bedroom apartment. The marital property, in contrast, had three bedrooms, one and a half baths, and an above-ground pool. Wife's current rent was $675 per month, and she sought to move into a bigger apartment, which would cost approximately $1000 per month. She also desired to purchase a home at some point, but she had no money for a down payment. Wife also needed to purchase health and dental insurance.

Based on these and numerous other findings, the court awarded permanent maintenance to wife. The court recognized that this was a long-term marriage, and wife had acted as a homemaker and stay-at-home mother for seven years. She cared for husband and for the home, continuing to cook and clean after returning to full-time work. It noted that husband had also worked hard and earned a good income during the marriage. As the court explained, an important factor in its decision was husband's use of the parties' assets as his own, both before and after the parties' separation. Husband spent exorbitant sums that he did not have. The parties refinanced the marital home twice and filed for bankruptcy once. Nonetheless, husband continued to use credit cards and to incur further debts. Husband also put wife in a position of hardship following the separation when he denied wife access to their joint bank accounts and continued to use this money for himself. In addition to depleting the marital assets, the court found evidence that husband was physically abusive to wife. Although wife admitted that she also drank to excess on occasion, the court found that husband was controlling and he limited wife's access to money. His attitude appeared to be that since wife moved out of the marital home, she no longer had any claim to the parties' assets. The court found that husband failed to understand that wife was an equal when it came to the use and division of marital property.

As reflected above, wife's monthly income was $3333 and her expenses were $3157.67, resulting in a difference of $175.33. The court found that while wife's income was currently adequate to make ends meet, it was far from adequate given wife's need to purchase a vehicle. It also failed to account for the fact that wife was living in a small, one-bedroom apartment with limited furnishings. The court found that wife reasonably desired to find a larger place to live, buy a car, and be able to save for a down payment on a house. While wife would be receiving a property settlement, she had no savings or retirement benefits, unlike husband, and she might reasonably choose to use the property settlement toward that end. During the marriage, the parties owned a home and ate out often. They managed their finances very poorly, which resulted in numerous refinances, loans, and a bankruptcy to address their debt. Nonetheless, the court found that the parties' standard of living during the marriage was superior to that which wife was now experiencing.

4

Husband's monthly income was $5364, which would be reduced to $4490 after four years. Husband would begin receiving social security benefits in 2011, however, of $1589 per month. Currently, husband's income exceeded his expenses by $810.15 per month, and would exceed his expenses by $2399 per month when his social security payments began in July 2011. After four years, husband's income would be $6079 for one year, following which his income would be reduced by $550 per month. Additionally, husband had had the benefit of all of the parties' financial assets since the separation. He used funds without wife's knowledge or consent and in violation of the court's interim order. Husband continued to live in the marital home, travel, eat out, and spend money with his credit cards. His standard of living was far superior to that enjoyed by wife, and it was closer to the standard of living established during the marriage. Finally, the court found nothing to prevent husband from working again and securing additional income.

Given these factors, the court concluded that without spousal maintenance, wife would be unable to meet her prospective and reasonable needs and that wife's standard of living was far below that established during the marriage and that which husband currently enjoyed. It thus ordered husband to pay $1000 per month to wife beginning on March 1, 2011; $1200 per month between August 1, 2011 and May 31, 2014; and $1000 per month thereafter.

This award is amply supported by the court's findings. We reject husband's assertion that the court relied on "unrealistic" assumptions about wife obtaining a car and saving for a down payment on a house. The court found these goals reasonable, and it is for the trial court to assess the credibility of witnesses and weigh the evidence. As to the standard of living, the court recognized that the parties managed their finances poorly during the marriage. Nonetheless, it found that husband continued to enjoy a much better standard of living than wife, one that was closer to what the parties enjoyed during the marriage. The court reasonably concluded that its award would allow wife to enjoy a similar standard of living. We find no grounds to disturb the court's maintenance award here.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Denise R. Johnson, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

5