*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

### ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-358

APRIL TERM, 2012

| | | |
|---|---|---|
| Victor Calhoun | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Washington Unit, |
| v. | } | Family Division |
| | } | |
| | } | |
| Dawn Calhoun | } | DOCKET NO. 4-1-10 Wndm |

Trial Judge: Brian J. Grearson

In the above-entitled cause, the Clerk will enter:

Husband appeals from the trial court's final divorce order. He argues that the court's maintenance award is unreasonable. We affirm.

The trial court made the following findings. The parties married in May 1989 and separated in June 2009. They have four children, one of whom was beginning high school at the time of the final hearing and living with mother. Husband is forty-five years old and wife is forty-one. Both are in good physical health. Wife, however, suffered from depression, which worsened as the marriage relationship deteriorated. Both parties are high school graduates. Husband earns $74,000 per year as a service manager for Irving Oil. Husband has health benefits and the use of a company vehicle but no retirement plan. Husband does have a retirement account valued at $5521 from a different job. Husband claimed $1600 per month in living expenses, which the court found reasonable. Wife was a stay-at-home mother during the marriage. She also homeschooled the children. Wife had no job skills, and while she indicated a desire to obtain a degree in either bookkeeping or accounting, she had no specific plan as to how that would be financed or when it would begin. Wife's current living expenses were approximately $3000 per month, which the court found reasonable apart from the estimate for household food ($400 per month) and charitable giving ($40 per month).

The parties have minimal assets and large debts. The marital home was foreclosed upon and they had accumulated $20,000 in credit card debt since 2007. The parties offered no credible explanation for the size of the credit card debt. The court also noted that before wife left the marital home, she sold some personal property for an unknown amount, returned some household appliances for a credit estimated to be $700, and retained most of the household furnishings worth between $2000 to $3000. Husband had also retained some personal property, valued at less than $1000. Neither party sought ownership of property in the other's possession.

The court ordered the parties to divide evenly any equity or deficiency that resulted from the foreclosure of the marital home. It awarded each party half of husband's retirement account.

The court found that all other personal property had been divided, and while there was some dispute regarding the value of the items in each party's possession, the difference was insignificant given the parties' extensive debt and the substantial difference in their incomes. Accordingly, it awarded each party the property in his or her possession. The court observed that the parties' inability to communicate with one another had contributed to their deteriorating financial circumstances. Husband was the breadwinner, managed the finances, and incurred the bulk of the credit card debt since 2007. The court thus made husband responsible for the credit card debt based on his greater income and responsibility for incurring the debt.

The court then turned to maintenance, looking to the factors set forth in 15 V.S.A. § 752. As indicated above, husband earned $74,000 in 2011. Wife was not employed during the marriage by agreement of the parties. The court recognized that, since the parties separated, wife had provided personal care to an individual one day a week for eleven hours at the rate of $15.00 per hour. The court found that this was not a position that required transferable skills and it was not reasonable to expect wife to meet her needs without husband's assistance. The court found that wife could not be expected to earn more than minimum wage until she acquired additional experience or education. Wife was also caring for the parties' minor child. The court found rehabilitative maintenance appropriate for a reasonable period of time for job training or education. While the parties did not have a very high standard of living during the marriage, the court concluded that wife's lack of education, job skills, experience, or training, would not allow her to achieve even the moderate standard of living the parties enjoyed during the marriage without long-term assistance from husband. The court also noted that wife had a history of depression and had experienced a significant emotional loss as a result of the end of the marriage and the divorce.

The court reasoned that, based on these factors and given that husband was responsible for the parties' credit card debt, it was not appropriate to continue the temporary maintenance order of $3,198.09 per month, which had equalized the parties' income. Instead, the court found a long-term maintenance award appropriate, apportioned as rehabilitative and compensatory maintenance. The court awarded wife $3000 in monthly maintenance for twenty years. Given wife's contributions during the long-term marriage, the court considered $2000 of the maintenance award as compensatory maintenance rather than rehabilitative maintenance. Husband appealed from this order.

Husband argues that the court's maintenance award lacks a reasonable basis. He states that it would take "far less" than $3000 per month for wife to maintain the marital standard of living. According to husband, the court failed to consider that wife was earning at least $165.00 per week working as a part-time caregiver and it failed to consider wife's prospects for future employment. Husband also suggests that the maintenance award must be overturned because it results in wife having a greater annual income than he does. Finally, husband argues that the court erred in finding that wife suffered from depression.

The court may award maintenance, either rehabilitative or permanent, to a spouse when it finds that the spouse lacks sufficient income and/or property to "provide for his or her reasonable needs" and the spouse is unable to support himself or herself "through appropriate employment at the standard of living established during the civil marriage." 15 V.S.A. § 752(a); accord Chaker v. Chaker, 155 Vt. 20, 24-25 (1990). The maintenance must be in the amount and for the

duration the court deems just, based on the consideration of seven nonexclusive factors. See 15 V.S.A. § 752(b). Once the court finds grounds for awarding maintenance, "it has broad discretion in determining the duration and amount." Chaker, 155 Vt. at 25. A maintenance award will be set aside only if there is no reasonable basis to support it. Id. As we have recognized, spousal maintenance has many purposes, including "to correct the . . . inequality of income resulting from the divorce, to equalize the standard of living of the parties for an appropriate period of time, to assist the recipient-spouse in becoming self-supporting, and to compensate a homemaker for contributions to family well-being not otherwise recognized in the property distribution." Gravel v. Gravel, 2009 VT 77, ¶ 24, 186 Vt. 250 (quotation omitted).

Husband fails to show that the court's award lacks a reasonable basis here. While husband believes that $3000 per month is excessive, the trial court found otherwise. As it explained, wife had no job skills and could not achieve even the moderate standard of living the parties enjoyed during the marriage without long-term assistance from husband. Her claimed expenses were reasonable. She also had sole legal and primary physical custody of the parties' minor child. Additionally, wife acted as a homemaker during the parties' long-term marriage, which the court concluded warranted compensatory maintenance. Moreover, the court assessed husband's reasonable expenses and concluded that husband had the ability to meet his needs and also meet those of wife through the spousal maintenance award. All of these factors provide a reasonable basis for the court's decision.

In making its award, the court recognized that wife was earning $165 per week working as a caregiver. It found, however, that wife could not meet her needs independently. She needed to acquire job skills or a higher level of education before she could earn more than minimum wage. The rehabilitative award recognizes this. See, e.g., Naumann v. Kurz, 152 Vt. 355, 359 (1989) (rehabilitative maintenance allows spouse to acquire skills and experience to become self-supporting). The court was not obligated to impute future income to wife, as husband suggests, nor would we find error simply if wife were to receive, as husband argues, a slightly greater net annual income than husband. In a similar vein, husband offers no support for his assertion that the court must consider the length of time that he paid temporary maintenance in arriving at its conclusion. While husband believes that twenty years of rehabilitative maintenance is excessive, the court reached a contrary conclusion. Given the vast disparity between husband's income and wife's income as well as wife's prospects for future employment, the court's award was not unreasonable.

The court's recognition of wife's contributions as a homemaker during the parties' long-term marriage was also reasonable. As husband acknowledges, both parties agreed that wife would not work outside the home during the marriage. The court did not find, as husband intimates, that the parties agreed that wife would forego employment "forever." Finally, the court did not err in considering wife's emotional condition and finding that she was depressed. The court was not making an expert medical diagnosis; rather, it was appropriately considering the "emotional condition of each spouse" as directed by statute. See 15 V.S.A. § 752(b)(5). Indeed, we note that husband testified that wife was depressed. Essentially, husband quarrels with the court's assessment of the weight of the evidence. As we have often repeated, it is for the trial court, not this Court, to assess credibility of witnesses and to weigh the evidence. See, e.g., Kanaan v. Kanaan, 163 Vt. 402, 405 (1995) (trial court's findings entitled to wide deference

3

on review because it is in unique position to assess the credibility of witnesses and weigh the evidence presented). We find no basis to disturb the court's decision.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice