VERMONT SUPREME COURT

109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.        25-AP-443



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

# ENTRY ORDER

JUNE TERM,   2026

Anne Goodrich v. Jeffrey Goodrich*

}
}
}
}
}

APPEALED FROM:

Superior Court, Windsor Unit,
Family Division
CASE NO. 236-9-19 Wrdm
Trial Judge: Lisa Warren

In the above-entitled cause, the Clerk will enter:

Husband appeals from the trial court's final divorce order.  Because we agree with husband that the court relied on a clearly erroneous finding in calculating maintenance, we reverse and remand the court's maintenance and property division awards for additional proceedings.  With respect to husband's remaining arguments, we discern no additional error that would warrant reversal.

## I.  Procedural History

Wife filed for divorce in September 2019.  Following hearings in May and August 2025, the court issued a final divorce order in November 2025.  The court made the following findings. The parties married in 1983, and they have three adult children.  Wife is sixty-two years old; husband is sixty-three.  Husband had several health issues but worked sixty hours per week as a civil engineer and was able to jog for exercise.  Wife worked outside the home early in the marriage, but by agreement, she stopped doing so and homeschooled the children between 1989 and 2005.  Wife is presently the executive director of Maynard House, which provides lodging for patients and families staying in the Hanover, New Hampshire area for medical treatment. The court found that wife earned approximately $83,200 annually, and as part of her employment, she received health savings account benefits.  Husband is a civil engineer for Pathways Consulting, LLC, and his total income was $76,921 per year.

The marital home in Norwich, Vermont was constructed on property owned by husband and his brother.  The home was valued at $852,000, subject to approximately $300,000 in debts. Husband subdivided the field below the marital home into three lots, which were approved for four-bedroom homes.  The goal was to build a home, sell it, and move on to the next lot. Husband did the design work.  Husband's brother built the marital home and the home next door, where husband's brother lived for several years.  There was no written agreement memorializing

repayment for the land on which the martial home sat. Wife currently lives in the marital home with her boyfriend. Her boyfriend did not contribute to living expenses.

The parties had a joint checking account during the marriage. Wife used $139,627 from this account for expenses associated with the marital home between September 2019 and September 2023; she also incurred home repair expenses of $5673. The court found that wife was not receiving spousal maintenance at the time she accessed the joint funds.

Husband and wife owned another home, on Church Street in Norwich, worth $493,000. Husband currently lives in this home with his mother. The parties were involved in ongoing litigation with husband's mother over her claim that she held a life estate in the property and was entitled to be paid for improvements she made to the property. At the time of the final hearing, the litigation outcome was unknown. No written instrument verifying a life estate was produced at trial.

Husband also owned an approximately ten-acre parcel of land in Norwich worth $148,600. He jointly owned another property with his brother, which was sold in April 2023, during the pendency of the divorce proceedings. The net proceeds to husband and his brother totaled $70,030.51, half of which was husband's share.

Husband and his brother own a real estate holding business called T&M Associates. Husband and his brother received a distribution from the company for their estimated 2020 taxes. When the divorce was filed, the business owned two commercial properties. The business sold one of the properties in 2020 for $535,000, with a net profit of $351,760. The court found that as 51% owner, husband would have received $179,397.66. The fair market value of this business, including the remaining property, was $451,000.

Husband, wife, husband's brother, and husband's brother's wife (sister-in-law) own another real estate holding company called River Bank Holdings, LLC. This company owned commercial real estate worth $2 million. The total value of the company was $1,111,2000 (factoring in the value of the real estate) and the parties' marital interest in the business was $500,040.

The parties also have an interest in Pathways Consulting, LLC. Pathways was created in December 2000 as a two-member limited liability company. Wife and sister-in-law each hold a 50% interest in the company. Husband is the president and his brother is the manager. Sister-in-law acts as the chief operating officer. The company provides land use planning, civil and environmental engineering, land surveying, landscape architecture, and construction services. Husband runs the day-to-day operations of the company. By 2007, the company was "a 5-million-dollar company."

Because it had two female business partners, Pathways was registered as a Disadvantaged Business Enterprise (DBE) and it was eligible for certain funds. In 2009, husband and his brother applied for and received a federal award under the DBE program. The goal of the program is to provide minorities with a fair opportunity to compete for federally funded transportation contracts. Each year, businesses participating in the program must file an Affidavit of No Change with the Department of Transportation in the State of New Hampshire. The program requires partners to be involved in the day-to-day business operations, which was not true of wife. Between 2007 to 2014, wife contributed part-time to the business, but she lacked the education and experience to act as a surveyor, engineer, bookkeeper, or manager of the company. Sister-in-law did not have any education or training as a surveyor. During the parties' divorce, wife refused to sign an affidavit indicating that Pathways still qualified as a

DBE because wife was not involved with the business. An Affidavit of No Change for 2021 was filed on Pathways' behalf. As of 2023, Pathways had approximately twenty projects through the DBE program with a value of roughly $100 million.

Pathways operates as a "pass-through" business in which company profits are reported as income to the owners. The business owners, in turn, are responsible for any tax liability. Wife incurred substantial tax liability arising from her reported income since 2021, which remained outstanding as it was not paid by Pathways. The court made additional findings regarding Pathways that we do not repeat here.

The parties presented competing expert testimony about the value of Pathways using three different methods. The court credited the testimony of wife's expert who valued Pathways at $1,575,000. Her expert applied a ten percent discount for lack of control in a closely held family business, which reduced the value to $1,418,000. Wife's 50% interest therefore had a value of $709,000.

The court awarded wife's interest in the company to husband. It noted that husband was still actively employed at Pathways and would continue to enjoy uninterrupted cashflow from the business. Husband earned $6,066.66 per month plus $5 in personal expenses per month. He received veteran's benefits of $338.49 monthly. He thus received a total of $6,410.15 per month or $76,921.80 per year. Husband previously earned $6,197.18 per month plus $600 in monthly stipends and $281.27 in VA benefits.

Wife earned nominal income between 1983 and 2012; during that time, she was a homemaker. The court described her employment history in detail. Wife has been the executive director at the Maynard House for two years and she earned $4950 per month. She also received $1500 in spousal maintenance from husband. She received an HSA stipend of $230.77 biweekly. Wife did not have any retirement funds, she did not receive retirement benefits, and she did not anticipate a great increase in her earnings at Maynard House.

The court addressed the use of joint funds during divorce proceedings, which we describe in additional detail below. It also made findings concerning the parties' monthly expenses.

Based on these and other findings, the court considered the factors set forth in 15 V.S.A. § 751(b). It recognized that this was a long-term marriage of almost thirty-six years. While the parties earned comparable incomes, husband had multiple business interests with his family members that included real estate ownership. With respect to the parties' vocational skills and employment, the court found that the parties earned relatively equal incomes despite wife's displacement from the workforce for many years. The court acknowledged that wife cared for the children and the home during the marriage, which allowed husband to pursue his career. The court identified all of the parties' assets, which totaled $3,008,571.04, and their liabilities, which totaled $316,184.25. The court noted that the money husband received from the sale of real property during these divorce proceedings totaled $214,397.66. It also noted that wife had used $109,000 of the parties' joint account funds primarily for expenses associated with the marital home. The court stated that the property distribution was in addition to an award of permanent spousal maintenance. The court found wife's current income insufficient to meet her reasonable needs given the standard of living during the parties' long-term marriage. Husband also had a greater opportunity for future acquisition of capital assets and income based on his ownership interests in the various family-held businesses and real estate. The court further found that wife had incurred substantial tax liability because of her interest in Pathways, LLC, and the way in

which the Goodrich family conducted that business, even though she had no real control or knowledge of day-to-day business operations.

Based on these and other considerations, the court awarded wife the marital home and the ten-acre lot referenced above, a cash award to compensate her for half of the funds husband received from selling real property during the divorce proceedings, her bank accounts, HSA, vehicles, and personal property in her possession. The court declined to offset wife's property award for her use of joint funds for the upkeep of the home, even though the withdrawal violated the interim domestic order, given that the property division favored husband. The court awarded husband the home where he was living, his interest in each of the businesses (including wife's 50% interest in Pathways, LLC), his bank and retirement accounts, and all personal property in his possession.

The court further ordered that if any of husband's family members asserted a claim against wife as to the real property that she was awarded, husband would be solely responsible for reasonable attorney's fees and costs that wife incurred in defending against such claims. It held husband solely responsible for any claim or judgment by any third party, including his mother, with respect to the home where he was living with his mother.

The court awarded wife permanent maintenance. It found that she earned approximately $4950 per month at the Maynard House and that her total monthly expenses were $6779. As discussed in greater detail below, the court considered the factors set forth by statute and awarded wife $1500 in permanent monthly spousal maintenance. Husband appeals.

## II. Arguments on Appeal

Husband challenges both the court's property division and its maintenance award.

We apply a well-established standard of review. The trial court has broad discretion in dividing the marital property, and we will uphold its decision unless its discretion was abused, withheld, or exercised on clearly untenable grounds. Chilkott v. Chilkott, 158 Vt. 193, 198 (1992). "We view the family court's factual findings in the light most favorable to the prevailing party below, disregarding the effect of modifying evidence, and will set aside factual findings only when they are clearly erroneous," meaning that there is no "reasonable and credible evidence to support them. Willey v. Willey, 2006 VT 106, ¶ 11, 180 Vt. 421. We are mindful that the distribution of property is not an exact science and, therefore, all that is required is that the distribution be equitable. Lalumiere v. Lalumiere, 149 Vt. 469, 471 (1988).

The court may award maintenance, either rehabilitative or permanent, to a spouse when it finds that the spouse lacks sufficient income and/or property to "provide for his or her reasonable needs" and the spouse is unable to support himself or herself "through appropriate employment at the standard of living established during the civil marriage." 15 V.S.A. § 752(a); Chaker v. Chaker, 155 Vt. 20, 25 (1990). The maintenance must be in the amount and for the duration the court deems just, based on the consideration of nine nonexclusive factors. See 15 V.S.A. § 752(b). Once the family court finds grounds for awarding maintenance, it has broad discretion in determining the duration and amount. Chaker, 155 Vt. at 25. A maintenance award will be set aside only if there is no reasonable basis to support it. Id. We leave it to the trial court, as factfinder, to assess the credibility of witnesses and weigh the evidence. See Kanaan v. Kanaan, 163 Vt. 402, 405 (1995) (trial court's findings entitled to wide deference on review because it is in unique position to assess the credibility of witnesses and weigh evidence presented).

4

With regard to the court's spousal maintenance award, husband contends that the court clearly erred in finding that wife earned approximately $4950 per month from her work at the Maynard House. We agree. Wife testified that her most-recent financial affidavit did not reflect her current employment at the Maynard House. Her paystubs from June and July 2024 showed a biweekly income of $3,115.39 plus $230.77 for a health stipend. Wife acknowledged at the hearing that the financial affidavit she filed in 2025 had not been updated to reflect her current employment and that it did not include the health stipend she received. Wife also testified that her current income was approximately $74,000 per year and that she received $500 each month toward her health-care costs. The court did not resolve these inconsistencies, and its decision with respect to wife's income is internally inconsistent. The court's reliance on the $4950 monthly figure, which was based on wife's prior employment, is clearly erroneous. Because the court's maintenance award rested on an incorrect factual premise, we must reverse and remand the maintenance award. Mindful of the interrelated nature of maintenance and property awards, we also vacate the court's property award "to allow the trial court leave to revise it if necessary." Downs v. Downs, 154 Vt. 161, 168 (1990) (reaching similar conclusion).

Reversed and remanded for additional proceedings.

BY THE COURT:

_____
Nancy J. Waples, Associate Justice

_____
Christina E. Nolan, Associate Justice

_____
Michael P. Drescher, Associate Justice